[No. 10893.   Department Two.   June 2, 1913.]

PHEBE GASKILL, *Respondent,* v. NORTHERN ASSURANCE
COMPANY, *Appellant.*[1]

INSURANCE POLICY—MISTAKE—KNOWLEDGE OF AGENT—WHEN IM-
PUTED TO COMPANY.  Liability upon a policy of fire insurance cannot
be avoided by the fact that the policy was by the agent inadvertently
written in the name of the husband of the plaintiff, while the prop-
erty insured was her separate property, where the agent writing the
policy had knowledge of the true ownership, acquired almost simul-
taneously with the writing of the policy.

INSURANCE—POLICY—MISTAKE—REFORMATION.   Reformation of a
policy of insurance will be decreed, where by the inadvertent mis-
take of the agent, having full knowledge of the facts, a policy upon
the separate property of the wife was issued in the name of the hus-
band, and the company was paid and retained the premiums.

APPEAL—REVIEW—HARMLESS ERROR—ISSUES AND PROOF.   In the
absence of a claim of surprise, a judgment treating a policy of in-
surance as reformed to correct a mistake, by allowing recovery
thereon by the wife, although the policy was issued to the plaintiff,
is not error, where evidence was admitted at the trial warranting
the reformation, although it was not pleaded, especially where there
was no showing of prejudice; since the policy could be enforced with-
out reformation on the ground that the husband took it as agent
or trustee of his wife.

Appeal from a judgment of the superior court for Spokane
county, Sullivan, J., entered September 20, 1912, upon find-
ings in favor of the plaintiff, in an action on a policy of fire
insurance.   Affirmed.

*Happy, Cullen, Lee & Hindman,* for appellant.
*Barnes & Dillard* and *Luby & Pearson,* for respondent.

ELLIS, J.—The plaintiff, as assignee of A. W. Amick and
Nettie B. Amick, husband and wife, brought this action to
recover for a total loss on a policy of fire insurance issued
by the defendant.   The property insured was a dwelling
house, situated on a lot formerly owned by one Frank Egan,

[1]Reported in 132 Pac. 643.

who wrote the insurance as local agent for the defendant. He had just sold this property and other property to the Amicks, canceled the policy which he had been carrying upon the same property, and solicited the business of re-writing the insurance in the defendant company. The business was all transacted through Amick, the agent testifying that he did not see Mrs. Amick at all, but that her husband told him to go ahead and write the insurance; that he knew this property was Mrs. Amick's separate property, but just "unthinkingly" wrote it up in A. W. Amick's name. The policy was delivered and paid for. The loss occurred during the term of the policy, and the defendant denied all liability. The cause was tried to the court without a jury, and judgment was rendered in favor of the plaintiff, from which the defendant prosecutes this appeal.

The only defense advanced is that the policy was invalid because it insured the property in question in the name of A. W. Amick, whereas it belonged to Nettie B. Amick, his wife. The sufficiency of that defense rests upon the question whether the knowledge of the true ownership possessed by the agent bound the appellant, as principal, so as to make the agent's mistake the mistake of the appellant, of which it cannot take advantage. As to what notice or knowledge of the agent will bind the principal, Mechem on Agency, § 721, lays down the rule, as supported by the better reason and the clear preponderance of authority, as follows:

"The law imputes to the principal, and charges him with all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or which he may previously have acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it; *Provided, however,* that such notice or knowledge will not be imputed: 1. Where it is such as it is the agent's duty not to disclose, and, 2. Where the agent's relations to the subject-matter or his previous conduct render it certain that he will not dis-

close it, and, 3.  Where the person claiming the benefit of the notice, or those whom he represents, colluded with the agent to cheat or defraud the principal."

There is an irreconcilable inharmony in the adjudicated cases, but, whatever their preponderance in number, we are clear that the better reasons support the rule so announced and qualified.  It is sustained by Pomeroy, who, after stating the general principle that the information of the agent in order to bind the principal must be acquired while he is agent and usually in the course of the transaction in which the principal is sought to be charged with notice, says:

"The foregoing requisite, general as it is in its application, is subject to an important and well-settled limitation, equally depending upon motives of expediency.  Where the transaction in question closely follows and is intimately connected with a prior transaction in which the agent was also engaged, and in which he acquired material information, or where it is clear from the evidence that the information obtained by the agent in a former transaction was so precise and definite that it is or must be present to his mind and memory while engaged in the second transaction, then the foregoing requisite becomes inapplicable; the notice given to or information acquired by the agent in the former transaction operates as constructive notice to the principal in the second transaction, although that principal was a complete stranger to and wholly unconnected with the prior proceeding or business."  Pomeroy, Equity Jurisprudence (3d ed.), § 672.

See, also, 31 Cyc. 1593, 1595; Wade, Notice (2d ed.), § 687; *Chouteau v. Allen,* 70 Mo. 290.

There are no facts here involved upon which to invoke either of the three exceptions to the rule noted by Mechem.  The case falls squarely within the rule itself.  The agent testified:

"I traded that property, together with other property, to Mr. Amick for a ranch, and in the trade  .   .   .    that particular house and the property was to be Mrs. Amick's.  I understood that at the time."

When asked if he knew it at the time he wrote the policy, he answered: "Well, I had known it all the time up to that time." And again, he testified:

"I canceled the policy I had and I solicited the business to write it for the Northern Assurance Company, and just unthinkingly wrote it up in A. W. Amick's name. I didn't see Mrs. Amick at all, and he told me to go ahead and write the insurance, that he wanted the insurance, and I wrote the policy up, and I didn't think anything more about it. Of course, I knew it was Mrs. Amick's; at least it was my understanding that it was Mrs. Amick's property, and I didn't think about having to go and search the records to find out who had the right or title in his name."

It is plain that the agent had actual knowledge that Mrs. Amick owned this property. He acquired this knowledge almost simultaneously with the writing of the policy. He does not claim to have forgotten it, but unhesitatingly says that he knew it all the time, but just "unthinkingly" wrote it up in Amick's name. If there ever was a case in which actual contemporaneous knowledge of a material fact on an agent's part should be held to bind the principal, these facts present it. We held in *Deering v. Holcomb*, 26 Wash. 588, 67 Pac. 240, 561, that knowledge acquired by an attorney while employed by the principal a year before bound the principal in another independent employment of the same attorney by the principal after the lapse of that year, so as to start running the statute of limitations against the principal from the date of the last employment. We there said:

"It is a general rule that notice to the attorney is notice to his client; that this rule applies to all notices arising in the progress of a case, or as to other matters in which the relation of attorney and client exists at the time of the notice, and it applies not only to knowledge acquired by the attorney in the particular transaction, but to knowledge acquired by him in a prior transaction in which he acquired material information, if the information was so precise and definite that it is or must be present to his mind and memory in the last transaction. *The Distilled Spirits*, 11 Wall, 356; 2 Pomeroy,

Equity Jurisprudence, § 672; *Wittenbrock v. Parker*, 102 Cal. 93 (36 Pac. 374, 24 L. R. A. 197, 41 Am. St. Rep. 172)."

To hold the principal affected with notice in that case where there was no continuous employment, and to hold the contrary in this case where there was a continuous employment covering the period when the knowledge was acquired, because the notice was acquired in a matter in which the agent was acting for himself, would be to ignore the rationale of the rule, namely, that it was the duty of the agent to divulge the facts to his principal and to act upon them for his principal, if material to the business in hand, and present in his memory.

The cases relied upon by the appellant are not, as we read them, controlling on the facts here. In *Pacific Mfg. Co. v. Brown*, 8 Wash. 347, 36 Pac. 273, the attorney had been employed by each of the antagonistic parties. He owed an equal duty to each. He occupied a position of divided allegiance. Though the opinion does not advert to this point, his prior knowledge was acquired in his professional relations to a former client. His case would seem to fall within the first and second exceptions noted in the rule as announced by Mechem. 1 Am. & Eng. Ency. Law (2d ed.), 1145.

In *Meyers v. Gerhardt*, 54 Wash. 657, 103 Pac. 1114, there was no agency in the ordinary sense requiring the communication of the knowledge to the principal, but a mere subsequent employment of a former servant of the adverse party. There was no agency to do anything requiring the exercise of such knowledge in the new master's business. Whatever knowledge he had was, in the language of the opinion, "acquired by him long before his employment by the respondents," who were sought to be charged with his knowledge. His knowledge was not only acquired at a distant time, but before the supposed agency ever came into existence. The distinction from the facts here is too plain to require further amplification. In the case of *Wheeler v. McGuire,* 86 Ala.

398, 5 South. 190, 2 L. R. A. 808, the notice was received before the agency was created, which is not the case here. Moreover, the Alabama court is in antagonism to the rule laid down by Mechem and Pomeroy, which we approve. In the case of *Pepper & Co. v. George*, 51 Ala. 190, cited by the appellant, the court, while reluctantly following the rule formerly adopted by the Alabama courts that the notice to bind the principal must be acquired by the agent during the agency and not before the agency began, says:

"This principle, though it seems to have been introduced for the convenience of professional lawyers rather than in conformity with the truth, has been now too long established to be abandoned. This is hardly reconcilable with the general rule, that the principal knows what the agent knows."

The court thus expresses a consciousness that the rule by which it was bound is logically indefensible. The only case cited by the appellant militating against the position which we have taken upon the facts here is *Taylor v. Taylor*, 88 Tex. 47, 29 S. W. 1057. In that case the court, though recognizing the general principle that notice to the agent is notice to the principal, says:

"This principle only applies where the agent acquires his knowledge in the transaction of his principal's business, and we therefore think that the doctrine of imputed notice should be limited to cases of that character."

This court has never so circumscribed the rule; in no case have we held it a *sine qua non* that the knowledge to affect the principal must be acquired by the agent in the transaction of the business of the principal. Other cases cited by the appellant relate to constructive notice, such as that conferred by possession of real estate or imputed by public records. They are not based upon the principle of agency.

Aside from all technical rules as to what notice to the agent will usually bind the principal, the evidence here presents peculiarly strong grounds for a reformation and enforcement

of the policy. It was clearly the intention of the Amicks on the one hand, and of the insurance company on the other, to insure this particular building by a valid and binding insurance. There was no misrepresentation by the Amicks as to the state of the title. In fact, they knew that the agent had actual knowledge as to where the ownership lay. He solicited the insurance as appellant's agent, and undertook to write it as appellant's agent. The Amicks assented. He made no inquiry as to the title, but undertook to act upon his own knowledge, which was as certain and definite as that of the Amicks themselves. Amick's name was inserted instead of his wife's name by a mere inadvertence of the agent. The evidence establishes not a mere probability but a certainty of innocent error. Since the mistake occurred through no fraud, wrong, or misrepresentation on the part of the Amicks, the contract should be reformed to speak the mutual intention of the parties and so enforced. The principal, rather than the person with whom he deals through an agent, should be held accountable for mistake of the agent committed in the course of the very transaction entrusted to his performance. There is no sound principle, either of law or equity, upon which the insured may be punished for the mistakes of the insurer's agent, so as to relieve the insurer from the liability which he meant to undertake and for which he was paid. *Eastman v. Provident Mut. Relief Ass'n*, 65 N. H. 176, 18 Atl. 745, 23 Am. St. 29, 5 L. R. A. 712. That in such a case reformation will be decreed, is clearly established.

"But it may be that as to the other plaintiffs the complaint is a defective statement of a good cause of action, and that it may be made plain by amendment. A bill in equity may be entertained to reform a written policy of insurance after the loss has occurred, upon the ground that it does not express the true contract entered into because of mutual mistake or a mistake of the draftsman. *Snell v. Atlantic F. & M. Ins. Co.*, 98 U. S. 25, 25 L. ed. 52. There is nothing sacred about an insurance policy which exempts it from reformation under

the same equitable doctrine applied to all other written contracts.

"In *Henkle v. Insurance Co.*, 1 Ves. Sr. 317, 27 Eng. Rep. 1055, the bill sought to reform a written policy after loss had actually happened, upon the ground that it did not express the intent of the contracting parties. Lord Hardwicke said: 'No doubt but this court has jurisdiction to relieve in respect of a plain mistake in contracts in writing as well as against frauds in contracts, so that if reduced to writing contrary to the intent of the parties, on proper proof, it would be rectified.'

"If the plaintiffs can establish by the proper degree of proof that this contract of insurance was made for the benefit of the wife and the two infants, who are the owners of the property, and that by mutual mistake, or the error of the draftsman, A. H. McIntosh was erroneously made the beneficiary therein, instead of the other plaintiffs, they will have made out a cause of action which will entitle them to a reformation of the written policy." *McIntosh v. North State Fire Ins. Co.*, 152 N. C. 50, 67 S. E. 45, 136 Am. St. 818.

See, also, *Keith v. Globe Ins. Co.*, 52 Ill. 518, 4 Am. Rep. 624; *Continental Ins. Co. v. Ruckman*, 127 Ill. 364, 20 N. E. 77, 11 Am. St. 121; *Barnes v. Hekla Fire Ins. Co.*, 75 Iowa 11, 39 N. W. 122, 9 Am. St. 450; *Esch v. Home Ins. Co.*, 78 Iowa 334, 43 N. W. 229, 16 Am. St. 443.

While the complaint did not ask for a reformation, it alleged that, at the time of the issuance of the policy, the appellant had notice and knowledge of the fact that A. W. Amick and Nettie B. Amick were husband and wife, and that the property insured was the separate property of the wife, and that, nevertheless, the agent wrote the policy in A. W. Amick's name. The answer denied this, but, as we have seen, the evidence fully sustained the allegations of the complaint. The issue so raised was evidently treated by the trial court as involving the right of reformation, since he admitted proof admissible only upon that issue, and made findings thereon which would warrant a reformation. His findings were as follows:

"That at the time of the issuance and delivery of said policy to said Nettie B. Amick, one A. W. Amick was the husband of said Nettie B. Amick, that its agent at Palouse, Washington, then well knew that the said property so insured was the property of Nettie B. Amick, nevertheless by the mistake and inadvertence of the said agent of the defendant, said policy was written and issued in the name of said A. W. Amick, though procured upon the property of and for the benefit of said Nettie B. Amick."

While the court entered no formal decree of reformation, he did treat the policy as reformed and rendered judgment accordingly. Even if this was error, the appellant was not prejudiced by it. At no time did it claim surprise at the scope of the inquiry, or at any time during the trial object or complain that the right of reformation was not within the issues. Nor is it now claimed that the evidence presented, which we have found would warrant a reformation, can be met, combated, or overcome in any way. It is merely argued that the evidence was not sufficient in any event to warrant a reformation. With this we cannot agree.

Authority is not wanting to the effect that, under the conditions here presented, a policy should be enforced without reformation on the ground that the husband took it as agent or trustee for the wife. In *Harris v. New York Mut. Ins. Co.*, 50 Pa. St. 341, the husband's interest was a mere right of curtesy initiate. The policy was written in his name. The court said:

"If there were more doubt than there is about the insurableness of the husband's interest, we think his purchase of the policy could be supported on the ground of agency for his wife. In *Lucan v. Crawford*, Lord Elden held that it was not necessary that the assured should have a beneficial interest in the property insured, but that it is sufficient if he be clothed with the character of trustee, agent, or consignee."

In *Lumberman's Mut. Ins. Co. v. Bell*, 166 Ill. 400, 45 N. E. 130, 57 Am. St. 140, where the insurance was written in

the name of the deceased husband, instead of that of the widow and children, the court said:

"Where an instrument, by accident, mistake or design, is made payable to a person by a wrong name it is not necessary for such person to go into equity to have it reformed, but may sue thereon in his or her true name, averring that the instrument was made to him or her in and by the name therein appearing."

This language would indicate that, in the opinion of that court, in such a case as that here presented, no formal reformation would be necessary, but that on proper proof the policy would be enforced as it was intended to be written.

The appellant asks us to distinguish between those cases where the party insured has an insurable interest of some kind and those where he has absolutely no interest, urging that, in the latter class of cases, to permit a recovery in any event, though the facts were known to the insurer, would be against public policy, in that such a policy is void as a wagering contract. This is undoubtedly true in cases where there is a deliberate intention to write the insurance in the name of a person other than the owner, but we know of no rule of public policy which necessitates or requires the perpetuation of a confessed mistake in an insurance policy, more than in any other contract. While the parties may not profit from a wager, neither may they profit from a mistake. As said in McIntosh v. North State Fire Ins. Co., supra, "there is nothing sacred about an insurance policy which exempts it from reformation, under the same equitable doctrine applied to all other written contracts." Unrebutted evidence establishing the mistake and the clear right of reformation having been furnished by the respondent, no question of public policy was thereafter involved.

It would be an idle formality to remand this cause for amendment of the complaint and a retrial upon the same evidence now before us to the end that a formal decree of reformation be entered preliminary to judgment. No prejudice

having been shown, and substantial justice having been done, the judgment is affirmed.

CROW, C. J., MAIN, FULLERTON, and MORRIS, JJ., concur.