[No. 14521. Department One. April 24, 1918.]

CHARLES S. FLORENCE, *Trustee etc., Appellant,* v. H. C.
DeBEAUMONT *et al., Respondents.*[1]

FRAUDULENT CONVEYANCES—BONA FIDE MORTGAGE FROM FRAUDU-
LENT VENDEE—KNOWLEDGE OF FRAUD—IMPUTED KNOWLEDGE—AGENCY
OF ATTORNEY. One who, in good faith, loaned money upon the secur-
ity of a chattel mortgage upon personal property, conveyed by DeB.
to D. in fraud of DeB.'s creditors, is not to be imputed with the
scrivener's knowledge of DeB.'s and D.'s fraudulent intentions, where
it appears that the scrivener's agency for him was limited to advice
as to the value of the property, and in drawing the chattel mortgage
he was acting as attorney for and was paid by DeB. and D.; and
especially where the scrivener in concealing the fraudulent convey-
ance, colluded with DeB. and D. and thereby practically destroyed
any relation of agency for the lender.

Appeal by plaintiff from a judgment of the superior
court for Asotin county, Miller, J., entered July 27,
1917, upon findings in favor of the plaintiff as against
certain defendants, in an action for equitable relief,
tried to the court. Affirmed.

*Fred E. Butler* and *E. J. Doyle,* for appellant.
*C. H. Baldwin,* for respondents.

ELLIS, C. J.—Plaintiff, trustee of the estate of H. C.
DeBeaumont, a bankrupt, brought this action against
DeBeaumont and wife, T. U. Denny and wife, and
F. G. Morrison, to set aside, as in fraud of creditors,
a deed and bill of sale made by DeBeaumont and wife
to Denny, and a chattel mortgage made by Denny and
wife to Morrison, and to recover the personal property
transferred and mortgaged by these instruments, or
its value; and further, to recover from Denny the value
of a crop of grain, at the time of the transactions in
question growing upon the land conveyed by DeBeau-
mont and wife to Denny.

[1] Reported in 172 Pac. 340.

It was orally stipulated in this court that F. G. Morrison, after plaintiff took this appeal, has died and that Ellen T. Morrison, the duly appointed executrix of his estate, be substituted as respondent in this appeal.

We find it unnecessary to notice the pleadings, further than to say that they sufficiently present the issue of good faith in these transactions. The cause was tried to the court without a jury. The court found in substance that, upon and prior to May 12, 1914, DeBeaumont and wife were the owners, as their community property, of 320 acres of land in Asotin county, Washington, subject to a mortgage for $9,000 to the Holland Bank; that they also owned certain farm machinery, hogs, cattle, sheep and eight work mules and harness; that the mules were subject to a mortgage of $500 to the Holland Bank; that there was growing upon the premises, during the seasons of 1914-1915, a crop of grain; that the land and personal property constituted all of the property owned by the DeBeaumonts at that time from which claims of creditors could be satisfied; that, at that time and prior thereto, DeBeaumont was insolvent, owing debts in the sum of $15,000; that, on May 12, 1914, DeBeaumont conveyed the real estate mentioned to Denny, and on the same day transferred and delivered to Denny all of the above-mentioned personal property and crops on the land; that the deed and bill of sale were filed for record on May 13, 1914, at the request of C. H. Baldwin, attorney for DeBeaumont and Denny; that the deed and bill of sale were without consideration and were made for the purpose of hindering, delaying and defrauding DeBeaumont's creditors; that, at the time of this transaction, DeBeaumont's attorney, Baldwin, was preparing for him a petition in bankruptcy, and that Denny, when he received the deed and bill of sale, knew of

DeBeaumont's insolvency and took the same for the purpose of assisting DeBeaumont in defrauding his creditors; that, for the purpose of securing Mrs. De-Beaumont's signature to the deed and bill of sale, Denny paid to her the sum of $950, which thereby became community property of the DeBeaumonts; that demand has been made by the trustee for the possession of the land and the delivery of the personal property upon Denny, who has refused to deliver the same, and upon Mrs. DeBeaumont for the $950, which she also has refused to pay to the trustee. Touching the mortgage from Denny to Morrison, the court specifically found:

"(23)   That, on the 12th day of May, 1914, said T. U. Denny made, executed and delivered to F. G. Morrison a chattel mortgage to secure the payment of $1,500, secured upon the personal property above mentioned and described, including said crop of grain.

"(24)   That, at the time said mortgage was made, said F. G. Morrison was unable to leave his home on account of physical injury, and said Chas. H. Baldwin drew up said mortgage and looked after the interests of said Morrison in taking said mortgage.

"(25)   That, at said time, said Chas. H. Baldwin was the attorney of the said H. C. DeBeaumont and knew of his insolvent condition.

"(26)   That said chattel mortgage given to said F. G. Morrison by said T. U. Denny, as aforesaid, was in consideration of the sum of $1,500, paid by the said Morrison to the said Denny.

"(27)   That said F. G. Morrison took said chattel mortgage without knowledge of the insolvent condition of said H. C. DeBeaumont, and without knowledge of the fraudulent transactions which had taken place between said H. C. DeBeaumont and said T. U. Denny, and was to the extent of his mortgage an innocent purchaser of said personal property covered by his said mortgage.

"(28)   That the sum secured by said mortgage was, prior to the trial of this action, repaid to the said F. G.

Morrison by the said T. U. Denny, and that said mortgage has been satisfied and released.

"(29)    That said F. G. Morrison has never received or converted to his use any property belonging to the estate of said H. C. DeBeaumont, bankrupt, as aforesaid.

"(30)    That the value of the personal property transferred by said H. C. DeBeaumont to T. U. Denny as aforesaid was $2,000, and that the landlord's interest in the crops grown on the lands sold by said DeBeaumont to said Denny was of the value of $950; that the said T. U. Denny should be credited in his accounting with the sum of $600 paid by him to the Holland Bank to release the mortgage on the mules described in said bill of sale, and with the sum of $150 paid as interest on the real mortgage held by said Holland Bank, leaving a balance of $2,200 to be accounted for by the said T. U. Denny to the said trustee."

Upon these findings and appropriate conclusions of law, the court decreed that plaintiff have judgment against Denny and Mrs. DeBeaumont jointly for the sum of $950, and interest from May 18, 1913, aggregating $1,160.58; that plaintiff recover from Denny the further sum of $1,250, with interest from May 18, 1913, aggregating $1,517.08, and that plaintiff recover his costs against the DeBeaumonts and Denny. The court further ordered that the action be dismissed as to the defendant Morrison and that he recover his costs. From this order of dismissal as to Morrison, plaintiff appeals.

We have examined the evidence as set out in the abstracts of record with frequent recourse to the statement of facts. We are satisfied that it supports the findings by a fair preponderance in every particular save one. The finding numbered 23 is in error, in that it states that the original chattel mortgage from Denny to Morrison for $1,500 covered a crop on the land. As a matter of fact, the mortgage on the crop was exe-

cuted on October 20, 1914, for an additional sum of $285, but we find this fact immaterial, inasmuch as this money was loaned for the purpose, and was used for the purpose, of putting in the crop and was repaid from the crop, so that, in any view·of the case, that transaction, both by reason of its date and purpose, was wholly devoid of any fraudulent design or injurious results to DeBeaumont's creditors. It was wholly independent of the main transaction and requires no further notice. The findings being sustained in other respects by ample evidence, we shall treat as established facts that the transfers from DeBeaumont to Denny were made in fraud of DeBeaumont's creditors; that Denny was an active participant in the covinous purpose, but that Morrison had no actual knowledge thereof or of DeBeaumont's insolvency. ·

It is elementary that the burden of proving fraud is upon the party who asserts it. There was no evidence whatever that Morrison actually knew of DeBeaumont's insolvency or of his purpose in making the transfers to Denny. In fact, the evidence does not show that he was advised, when he made the loan of $1,500, that Denny was purchasing the chattels from DeBeaumont. Were it not for the fact that the court found, on ample evidence, that the attorney who represented all parties in this transaction knew of DeBeaumont's insolvent condition at the time and was preparing papers for his voluntary bankruptcy, the discussion would end here. But that fact makes it necessary to consider the question of law as to whether, in the light of all the evidence, the knowledge of the attorney must be imputed to Morrison so as to make him in law a participant in the covin of DeBeaumont and Denny.

As to what notice or knowledge of·an agent or an attorney will impute notice to the principal or client

we are committed to the rule stated by Mechem as sustained by reason and authority, as follows:

"The law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or, according to the weight of authority, which he may previously have acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it. Provided, however, that such notice or knowledge will not be imputed: (1) Where it is such as it is the agent's duty not to disclose; (2) Where the agent's relations to the subject-matter are so adverse as to practically destroy the relation of agency; and, (3) Where the person claiming the benefit of the notice, or those whom he represents, colluded with the agent to cheat or defraud the principal." 2 Mechem, Agency (2d ed.), p. 1397, § 1813.

See, also, *Gaskill v. Northern Assurance Co.*, 73 Wash. 668, 132 Pac. 643. Though this rule is a wholesome one and well sustained by authority, "the courts show a plain determination not to extend it, but to keep it confined within narrow and necessary limits." 2 Pomeroy, Equity Jurisprudence (2d ed.), p. 1169, § 672. An agent or attorney can no more bind his principal by his knowledge than by his acts in matters outside the scope of his authority or employment. The knowledge of the agent to be notice to the principal must be that of an agent who has authority to deal for the principal in reference to the specific matter which the knowledge affects. As said by an eminent jurist in a well-reasoned and leading case on this subject:

"The rule which imputes to the principal the knowledge possessed by the agent applies only to cases where the knowledge is possessed by an agent within the scope of whose authority the subject-matter lies; in other words, the knowledge or notice must come to

an agent who has authority to deal in reference to those matters which the knowledge or notice affects. The facts of which the agent had notice must be within the scope of the agency, so that it becomes his duty to act upon them or communicate them to his principal. As it is the rule that whether the principal is bound by contracts entered into by the agent depends upon the nature and extent of the agency, so does the effect upon the principal of notice to the agent depend upon the same conditions. Hence, in order to determine whether the knowledge of the agent should be imputed to the principal, it becomes of primary importance to ascertain the exact scope and extent of the agency." *Trentor v. Pothen,* 46 Minn. 298, 49 N. W 129, 24 Am. St. 225.

See, also, *Atchison, T. & S. F. R. Co. v. Benton,* 42 Kan. 698, 22 Pac. 698; *Larzelere v. Starkweather,* 38 Mich. 96.

The evidence before us makes it plain that the agency of Baldwin for Morrison was extremely limited in its subject-matter. So far as the record shows, it extended no further than to advise Morrison of the existence and physical value of the chattels on which he was lending his money. Before he talked with Baldwin he had practically agreed to lend the money to Denny, whom he had known for some years. He had been injured in an accident and was confined to his home when Baldwin came to him with the chattel mortgage, and because of his injury he then told Baldwin, who had in prior years been attorney for him in other matters, in substance that he would take his estimate of the property and make the loan. While he admitted that Baldwin was his agent to that extent, it is clear that, throughout the whole transaction, Baldwin was really the attorney and agent for DeBeaumont and Denny and was serving them in his visit to Morrison. Denny's title to the chattels or his right to mortgage the same was a matter concerning which there is no evi-

dence whatever that Morrison ever sought or received advice from Baldwin. That matter was wholly outside the scope of Baldwin's agency for Morrison, so far as any such agency was established by the evidence. The fact that Baldwin drew the chattel mortgage we regard as immaterial. He received no fee from Morrison for doing so, nor, in fact, for any other services in the premises. He received his compensation for all of his services from Denny or DeBeaumont. In any event, he was a mere scrivener in drawing the chattel mortgage. We are clearly of the opinion that, in view of the special and limited nature of Baldwin's agency for Morrison, Baldwin's knowledge of the insolvency and fraudulent purpose of DeBeaumont and of Denny's participation in that purpose cannot be imputed to Morrison.

But there is another reason potent in equity why Morrison cannot be affected with notice of Baldwin's knowledge of the covinous nature of the transaction as between DeBeaumont and Denny, whatever may have been the scope of Baldwin's agency for Morrison. Baldwin was agent and attorney for both Denny and DeBeaumont on the one hand and for Morrison on the other. If Morrison told the truth, Baldwin never advised him that DeBeaumont was insolvent and was about to go into voluntary bankruptcy, or that the transfers of his property to Denny were such as to be in fraud of DeBeaumont's creditors, or that such was the purpose of DeBeaumont and Denny. Obviously this knowledge was withheld from Morrison with the consent, or at least with the connivance, of both De-Beaumont and Denny. True, nobody so testified in terms, but the facts clearly raise that inference. The very fact that Morrison did not actually know of the fraudulent purpose of DeBeaumont and Denny, who were acting under the advice and direction of Baldwin

and who, as Baldwin knew, had to have the money from Morrison in order to carry out that purpose by securing Mrs. DeBeaumont's cooperation, makes the inference that Denny and DeBeaumont knew that the knowledge would be withheld by Baldwin from Morrison almost a certainty. At any rate, that was an inference which the trial court had the right to draw from the undisputed facts. In such a case, the concealment constitutes a fraud upon the party kept in ignorance, the agent himself being such an instrument in that fraud as, in the language of Mechem, above quoted, "to practically destroy the relation of agency." Mechem, after pointing out that the rule of imputed notice rests in the assumption that the agent will report to the principal every thing touching the subject-matter material to the principal's protection and interest, says:

"This presumption, however, it is said, will not prevail where it is certainly to be expected that the agent will not perform his duty, as where the agent, though nominally acting as such, is in reality acting in his own or another's interest, and adversely to that of his principal." 2 Mechem, Agency (2d ed.), page 1399, § 1815.

See, also, 2 Pomeroy, Equity Jurisprudence (3d ed.), § 674.

From whatever angle this transaction may be viewed, in the light of the evidence we are satisfied that Morrison had no actual knowledge of the fraudulent purpose of DeBeaumont and Denny, and that notice cannot be imputed to him from his limited employment of their attorney, Baldwin, in this transaction.

The judgment is affirmed.

Webster, Fullerton, Main, and Parker, JJ., concur.