[No. 26137.   Department One.   September 22, 1936.]

ELEANOR MILLER *et al., Appellants,* v. UNITED PACIFIC CASUALTY INSURANCE COMPANY, *Respondent.*[1]

[1]Reported in 60 P. (2d) 714.

*Witherspoon, Yantes & Witherspoon (W. V. Kelley, Jr.,* of counsel), for appellants.

*Ballinger, Hutson & Boldt,* for respondent.

STEINERT, J.—Plaintiffs brought this action upon a liability insurance policy issued by defendant. The answer disclaimed liability upon the ground that, after its issuance, the policy had been illegally and fraudulently transferred from the original holder to one of the plaintiffs. Upon a trial by the court, without a jury, judgment dismissing the action was entered. Plaintiffs have appealed.

The facts, as shown by the evidence and the admissions in the pleadings, are as follows: During the year 1934, the respondent was a Washington corporation engaged in the automobile insurance business. It maintained its principal office in Seattle and a branch office in Spokane. W. S. McCrea & Company, of Spokane, was the local agent of the respondent and had full authority to issue and deliver respondent's insurance policies. Abe Kalin was a soliciting agent and clerk in the employ of W. S. McCrea & Company.

The appellants, who are mother and son, lived, with a number of their relatives, in what is designated as the Welch home in Spokane. The family consisted of Susan Welch, an elderly lady, who died in February, 1935, her two widowed daughters, Mabel Wilson and appellant Eleanor Miller, the four children of Mabel Wilson, the youngest of whom was Susanne Wilson, about twenty-four years of age, appellant Jack Miller, the son of appellant Eleanor Miller and about twenty-three years of age, Helen Welch, granddaughter of Susan Welch and the ward of appellant Eleanor Miller, and another child about fourteen years of age. Raymond Welch, who will be mentioned later

herein, was the son of Susan Welch and the uncle of Jack Miller. He died, however, in February, 1934.

Four automobiles, of which two were Ford sedans, one a Packard coupe, and one a Packard sedan, were owned by various members of the family. The title to the Packard coupe was in Susanne Wilson, and the title to the Packard sedan was in appellant Eleanor Miller. All of the cars were used indiscriminately by the various members of the family excepting Mrs. Welch and the young child, although first call for use was reserved to the member holding title to the particular car. This action relates only to the Packard coupe, owned by Susanne Wilson, and the Packard sedan, owned by appellant Eleanor Miller.

Up to the time of her death, Susan Welch was the head of the family and paid all the expenses incident to the home and the maintenance of all the cars. After the death of Mrs. Welch, Mabel Wilson became the recognized head of the family, but the expenses were allocated proportionately among its several branches.

Raymond Welch, prior to the time of his death in 1934, was in charge of Welch Investment Company, which was located in the Welch building in Spokane and did the character of business suggested by its name. In the office with him was a stenographer and bookkeeper by the name of Dora Beach. After the death of Raymond Welch, appellant Jack Miller had charge of the office and, with the assistance of Miss Beach, attended to all business matters, including insurance, in which the family was concerned. On account of his youth, however, he was inexperienced in business matters, particularly insurance.

The business relations between W. S. McCrea & Company and the Welch family began with the issuance, in 1934, of one of respondent's policies, which covered plate glass insurance on the Welch building.

This matter was handled by Mr. Kalin, the agent for W. S. McCrea & Company. That particular piece of business was a very attractive one, not only because of its size, but also because it gave promise of future business. There was a general understanding between the Welch family and W. S. McCrea & Company that insurance matters in the future would be taken care of, to a considerable extent at least, by W. S. McCrea & Company. Kalin was well acquainted with the Welch family, knew of the number of automobiles owned by its members, and was cognizant of the way in which they were being used. Certain members of the office force of W. S. McCrea & Company and others of the respondent insurance company also had a general knowledge of these conditions.

On September 24, 1934, W. S. McCrea & Company, as agent for respondent, and at the instance of Jack Miller acting for Susanne Wilson, issued to Susanne Wilson a liability insurance policy covering the Packard *coupe* owned by her. This is the policy upon which this action is based. The policy covered fire and transportation, theft, guaranty collision, public liability to the extent of one hundred thousand dollars, and property damage to the extent of five thousand dollars. The total annual premium amounted to $93.42.

The policy contained an acceptance clause which provided that the assured, by acceptance of the policy, represented that the statements contained in the schedule of insurance and warranties, subjoined thereto, were true, and that the policy was issued in consideration thereof. In the schedule was a provision that "The interest of the assured is sole and unconditional ownership." The policy further provided that no condition or provision therein should be waived or changed except by endorsement attached thereto and signed by an executive officer of the company.

Before issuing the policy, respondent made an investigation and learned that the car was to be driven by Susanne Wilson, her two sisters, and her brother.

At the time that the policy was taken out, the Packard *sedan* owned by appellant Eleanor Miller had been laid up and was not being used. Because of this fact, a former insurance policy, which had theretofore covered the sedan, had been cancelled so far as liability insurance was concerned, but retained as to fire and theft coverage.

We now come to the occasion out of which this particular controversy arose.

Shortly before October 14, 1934, the Welch family decided to discontinue the use of the Packard coupe owned by Susanne Wilson and to resume the use of the Packard sedan owned by appellant Eleanor Miller. They discussed among themselves the matter of insurance and decided that public liability insurance on the coupe would no longer be needed, but that it would be needed on the sedan. Jack Miller thereupon phoned to Kalin regarding the matter. Kalin came to the office of the Welch Investment Company, where he was told by Jack Miller to *cancel* the liability insurance on the coupe and to *write a similar policy,* with the same limits, on the sedan. He was also informed that the sedan was owned by Eleanor Miller. Kalin made a memorandum of the necessary data, according to the information given him, and turned the same into the office of W. S. McCrea & Company for the purpose of having the necessary change of coverage made. It seems, however, that, in the meantime, Kalin had conceived the idea of merely having a transfer endorsement affixed to the original policy instead of canceling the old policy and writing a new one. At any rate, that is what was done.

According to the evidence in the case, transfers of

insurance policies from one automobile to another are permissible only (1) when the owner of an insured car desires to substitute another car owned by him and to transfer the coverage from the one to the other, or (2) when the owner of an insured car sells it to another person, and the two parties and also the insurance company consent to the transfer. Neither of those alternatives applies in this case, because Susanne Wilson never owned the Packard *sedan*. It also appears from the evidence that respondent itself could not legally, and would not, have transferred the insurance in the manner in which it was done.

When the transfer endorsement was delivered by Kalin at the office of the Welch Investment Company, it did not show upon its face that Eleanor Miller was the owner of the sedan. Reading the endorsement in connection with the policy, it would appear therefrom that Susanne Wilson was the owner. Jack Miller and Miss Beach both demurred as to the propriety of the method of transfer of coverage. Their objections were based merely upon the fact that they had never, in their experience, known of a transfer of insurance from one car to another being made by mere endorsement. Kalin assured them, however, that it was the proper method and further told them that, by following that procedure, they would realize a saving of premium. Not being fully satisfied with Kalin's explanation, Jack Miller took Kalin out to the Welch home for the purpose of consulting his mother, appellant Eleanor Miller. Kalin made the same representations to her, and, upon the strength of his assurances, the transfer endorsement was accepted by the appellants.

The endorsement contained a provision that it should not be binding on the respondent until it had been countersigned by its authorized agent. W. S. McCrea & Company countersigned the endorsement as such

agent. The amount of saving in premium under the method employed was $12.38.

All would have been well, under the circumstances narrated, and this case would never have arisen, except for the unfortunate fact that, on November 30, 1934, which was after the time that the endorsement was made, Jack Miller, while driving the Packard sedan owned by appellant Eleanor Miller, collided with another automobile. As a result of the collision, an occupant of the other automobile was injured. Suit for damages was instituted by the injured person against the appellants herein, resulting in a verdict and judgment against appellants in the sum of fourteen thousand five hundred dollars.

Respondent assumed the defense of that action, but under the mistaken belief that the sedan was owned by Susanne Wilson. When the true situation became fully known to respondent, it disclaimed liability and proceeded with the defense of the action only after an agreement reserving its disclaimer of liability had been executed by appellants. No appeal was taken from the judgment against the appellants, and they are now liable thereon. This action was therefore brought by them for reimbursement for such liability.

There are seven assignments of error, grouped under two heads. The first group relates to the rejection by the court of evidence offered by appellants tending to show that there was no collusion or conspiracy between appellants and the agent, Kalin, to withhold material information from the respondent insurance company.

It is unnecessary to consider this group of assignments, because (1) the court did not find that there was collusion or conspiracy or even preconceived intentional fraud, and (2) a careful reading of the statement of facts convinces us beyond any question, not

only that there was no fraud committed by the appellants, but that the conclusion to be drawn from the established facts is that the transaction came about solely through the mistake of Kalin, and not through any concealment by appellants.

The second group of assignments presents the real question in the case, namely, whether respondent is bound by, and liable for, the mistake of Kalin.

Rem. Rev. Stat., § 7033 [P. C. § 2909], defining certain insurance terms, provides:

" 'Agent,' 'insurance agent' or 'local agent' is a person, copartnership or corporation, duly authorized and commissioned by an insurance company, to solicit applications for and effect insurance in the name of the company, and to keep a complete record of all such transactions, and to discharge such other duties as may be vested in or required of the agent by said insurance company."

Rem. Rev. Stat., § 7080 [P. C. § 2943], provides that it shall be unlawful for any insurance company, admitted to do business in this state, to write, place, or cause to be written or placed, any policy of insurance covering risks located in this state, except through or by a duly authorized agent of such company residing and doing business in this state.

It is admitted by respondent that W. S. McCrea & Company was an insurance agency having authority to issue its insurance policies, and that such agent wrote and placed this particular policy for respondent. The evidence shows that W. S. McCrea & Company had express authority to write, countersign, cancel, and rewrite policies of liability insurance for respondent. W. S. McCrea & Company, therefore, came within the statutory definition of agent, and, in negotiating the particular policy, acted as the *alter ego* of respondent.

The evidence also shows that the business and procedure of procuring insurance, countersigning policies, and contacting respondent's branch office in such matters was delegated and entrusted by W. S. McCrea & Company to Kalin, and that these facts were well known to respondent. What Kalin did, therefore, was the act of W. S. McCrea & Company and, in turn, the act of the respondent. *Thompson v. Michigan Mutual Life Ins. Co.*, 56 Ind. App. 502, 105 N. E. 780; Cooley's Brief on Insurance, p. 4054; 14 R. C. L. 1160, § 341.

It is contended by respondent, however, that since the transfer by endorsement was illegal under the given circumstances, and since the true fact of ownership of the Packard sedan was not communicated to it by Kalin, it is not bound by the knowledge which Kalin had, nor liable upon the endorsement on the policy.

This contention does not accurately delineate or define the true situation in the case. Kalin did have authority, as the agent of W. S. McCrea & Company, to cancel insurance policies and to rewrite others for respondent. That is what appellants asked and expected him to do in this particular instance. That is what he was authorized by the respondent to do, and that is what he, at first, led the appellants to believe he would do. Upon his own initiative, however, he did something else, which he evidently thought was the correct and the more economical thing to do, but which it now transpires was improper. Then, when appellants' attention was called to the changed method, they demurred, but were assured by Kalin that the method used accomplished the thing that was sought.

The appellants were concerned only with getting the proper coverage and did everything that could be expected of them in that regard. It was not incumbent upon them to challenge the statements of W. S. Mc-

Crea & Company or of Kalin and go direct to the respondent concerning the manner of canceling and rewriting the policy. The respondent could do business only through an authorized agent, and W. S. McCrea & Company was such agent.

This is not a case where appellants have endeavored to secure an unauthorized transfer of a policy from one automobile to another. It is a case where the appellants ordered a cancellation of one policy and the writing of another, but were told that the coverage which they desired was obtainable in the form suggested by the agent. The minds of the parties had fully met upon what the coverage was to be, and the contract was closed upon that understanding. It was never contemplated by the parties that they should execute an abortive or illegal contract. The facts upon which the transaction depended were fully disclosed to the agent. It was upon those very facts that he acted. This is, therefore, simply a case where an agent, authorized and directed to do a particular thing, attempts to do it, but mistakenly accomplishes another result, the effect of which is unknown, at the time, to himself or to the parties with whom he deals.

The rule as to what notice or knowledge, had by an agent, will bind the principal is laid down in 2 Mechem on Agency (2nd ed.) 1397, § 1813, as follows:

"The law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or, according to the weight of authority, which he may previously have acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it. Provided, however, that such notice or knowledge will not be imputed: (1) Where it is such as it is the agent's duty not to disclose; (2) Where the agent's relations to the subject-matter are

so adverse as to practically destroy the relation of agency; and, (3) Where the person claiming the benefit of the notice, or those whom he represents, colluded with the agent to cheat or defraud the principal."

That rule has been announced and accepted by this court in a number of cases. *Gaskill v. Northern Assurance Co.*, 73 Wash. 668, 132 Pac. 643; *Florence v. DeBeaumont*, 101 Wash. 356, 172 Pac. 340, 4 A. L. R. 1565; *Harper v. Fireman's Fund Ins. Co.*, 154 Wash. 77, 280 Pac. 743; *Paulson v. Montana Life Ins. Co.*, 181 Wash. 526, 43 P. (2d) 971. None of the exceptions noted in the text above applies here. The rule itself applies and, accordingly, controls. The information regarding Eleanor Miller's ownership of the car was acquired by Kalin while acting within the scope of his authority as agent for respondent. His knowledge, therefore, became the knowledge of the respondent.

Further, respondent contends that the policy was voided because of the warranty of unconditional ownership of the car in the *assured*, who, according to the original policy, was Susanne Wilson and not Eleanor Miller.

Waiving further reference to the peculiar circumstances under which the term "assured" was adopted and employed when the transfer was made, we call attention to Rem. Rev. Stat., § 7078 [P. C. § 2941], which provides:

"No oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance, by the assured or in his behalf, shall be deemed material or defeat or avoid the policy or prevent it attaching, unless such misrepresentation or warranty is made with the intent to deceive."

Construing that section of the statute, we have repeatedly held that, in order to avoid or defeat the policy, there must be proof of intent to deceive. *Eaton v.*

*National Casualty Co.,* 122 Wash. 477, 210 Pac. 779; *Houston v. New York Life Ins. Co.,* 159 Wash. 162, 292 Pac. 445; *McCann v. Reeder,* 178 Wash. 126, 34 P. (2d) 461.

In this case, the court did not find that there was any intent to deceive, and, as already stated, our reading of the evidence convinces us that none was shown. A mistake was made, but that mistake was not due to any fault on the part of appellants. In the absence of intent to deceive, the policy was not voided.

The remaining question in the case relates to the form of relief to which appellants are entitled. The action is based upon the policy and the endorsement. The appellants asked for judgment against respondent in the amount of the liability established against themselves in the collision suit. In the prayer of the complaint, appellants further asked that, if the policy and endorsement did not express the agreement and intention of the parties, the same be reformed to express the true agreement and intent and to cover the liability of respondent thereon.

It is a general rule, somewhat loosely stated, that equity will not grant relief against mistakes of law. But even that broad and general rule has its exceptions.

When an instrument is drawn and executed with the professed intention that it shall effect an agreement, either oral or in writing, previously entered into by the parties, but which, by mistake of the draftsman, either as to fact or law, violates or does not fulfill the intention of the parties, equity will relieve against the mistake by conforming the instrument to the agreement. We have frequently so held. *Hendrickson v. Lyons,* 121 Wash. 632, 209 Pac. 1095; *Hazard v. Warner,* 122 Wash. 687, 211 Pac. 732, 31 A. L. R. 381; *Woods v. Desmond,* 156 Wash. 359, 286 Pac. 856.

Respondent concedes the correctness of this rule or exception, but contends that it does not apply here, for the reason that the endorsement is in the exact form agreed upon and that the particular form was adopted for the purpose and with the view of defrauding the respondent.

To say that the form was agreed upon by the parties is to beg the question. The particular form was adopted, but its effect was misunderstood and was never expressive of the intention of the parties. As to the claim of fraud, we have already sufficiently expressed our view.

We think that the policy and endorsement, taken together, should be so reformed as to express the real agreement of the parties as already indicated. We also think that this can be done in the present action. Inasmuch as all the evidence is before us and the agreement of the parties is manifest, there can be but one result. It would be idle to remand the case for the mere formality of reformation. The agreement can, and should be, reformed and enforced in the one proceeding. *Gaskill v. Northern Assurance Co.*, 73 Wash. 668, 132 Pac. 643; *Chapman v. Milliken*, 136 Wash. 74, 239 Pac. 4.

Respondent will, of course, be entitled to receive, or deduct, the amount of the added premium consequent upon the reformation.

The judgment is reversed, with direction to the trial court to enter judgment for appellants in the amount found to be due them, according to the views herein expressed.

MILLARD, C. J., GERAGHTY, MITCHELL, and TOLMAN, JJ., concur.