EDWARD B. ALLEN *v.* THOMAS W. NISSLEY

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued April 2—decision released July 7, 1981

*David M. Wallman,* for the appellant-appellee (defendant).

*Kevin Tierney,* with whom, on the brief, was *Sperry A. DeCew,* for the appellee-appellant (plaintiff).

ARMENTANO, J. In July, 1976, the plaintiff entered into a real estate sales agreement with the defendant for the purchase of residential property located in Stamford. The agreement provided for a closing date of July 30, 1976, and for the construction of a driveway upon which the issuance of a certificate of occupancy was contingent. On July 16, 1976, a Bridgeport savings bank gave a mortgage loan commitment to the plaintiff in the amount of $51,200. The bank subsequently delivered the funds to the plaintiff's then attorney who wrongfully appropriated them for his own use. The attorney postponed the July 30, 1976 closing, as well as numerous other closings arranged over the next few months, as he attempted to replace the converted mortgage loan funds. The plaintiff's attorney concealed from the parties the true reason for the closing delays by making an issue over the construction of the driveway and the issuance of the certificate of occupancy. On February 14, 1977, the parties entered into a stipulation in which they agreed that the closing would occur within a reasonable time. On February 17, 1977, the attorneys for the parties scheduled February 24, 1977, as the closing date.

On February 18, 1977, the plaintiff's attorney replaced the funds wrongfully appropriated by him and returned them to the savings bank on February 23, 1977. No closing took place on February 24, 1977. On February 25, 1977, the plaintiff's attorney received from the defendant's attorney a letter, dated the previous day, which purported to rescind the agreement between the parties and to hold the plaintiff liable for his breach. On March 3, 1977, the savings bank reissued a check for the mortgage loan and delivered it to the plaintiff's attorney. Subsequently, the plaintiff's attorney indicated to the defendant that he was prepared to close on March 7, 1977. The defendant refused to participate in this or any other closing. Prior to March 7, 1977, neither the plaintiff nor the defendant had actual knowledge of the attorney's conversion of the mortgage loan funds.

After the defendant refused to convey the property to him, the plaintiff commenced this action, seeking specific performance and damages. The trial court ordered specific performance, but no damages. It based its decision on the following two conclusions: (1) the time between the February 14, 1977 stipulation and the March 7, 1977 closing date proposed by the plaintiff's attorney was not an unreasonable delay; and (2) the plaintiff was ready, willing and able at all times to purchase the property. The defendant has not appealed from the first conclusion. He does find error in the second one as well as in the court's order of specific performance and its rulings excluding certain testimony offered by him.

The plaintiff has cross appealed, claiming that the court erred in not awarding damages in addition to the order of specific performance.

## I

In order to be awarded specific performance, the plaintiff had the burden of proving that he was ready, willing and able at all times to purchase the property. *Eastern Consolidators, Inc.* v. *W. L. McAviney Properties, Inc.,* 159 Conn. 510, 510–11, 271 A.2d 59 (1970). The defendant claims error in the trial court's conclusion that the plaintiff was ready, willing and able to close irrespective of the imputation to the plaintiff of his attorney's actions. To substantiate his claim, the defendant isolates the plaintiff's responses to several questions posed by the defendant's attorney.

Our function on appeal is not to determine whether the trier of fact could have reached a conclusion other than the one reached. "Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 222, 435 A.2d 24 (1980). This court will overrule a decision of the trial court only if it is clearly erroneous. Id.; Practice Book § 3060D. We have examined the entire record and conclude that the court's determination that the plaintiff was ready, willing and able to close is not clearly erroneous.

## II

The defendant also argues that notwithstanding the accuracy of the foregoing factual determination, the trial court erred in not imputing to the plaintiff the true cause of the failure to close: the actions of his then attorney. The general rule is that the acts of an attorney are imputed to a client when

they are performed in the furtherance of the business for which the attorney has been retained. See *Lafayette Bank & Trust Co.* v. *Aetna Casualty & Surety Co.,* 177 Conn. 137, 140, 411 A.2d 937 (1979); *Wesson* v. *F. M. Heritage Co.,* 174 Conn. 236, 243, 386 A.2d 217 (1978); *Sweeney* v. *Pratt,* 70 Conn. 274, 282, 39 A. 182 (1898). This general rule may yield, however, to the special circumstances of a case. *United States* v. *Powe,* 591 F.2d 833, 846 n.46 (D.C. Cir. 1978); *Kung* v. *FOM Investment Corporation,* 563 F.2d 1316, 1318 (9th Cir. 1977); 7A C.J.S., Attorney & Client § 181; see *Lebowitz* v. *McPike,* 157 Conn. 235, 242, 253 A.2d 1 (1968). When an attorney acts in bad faith or intentionally neglects the client's business, the general rule does not apply. *Sayer* v. *Lee,* 40 S.D. 170, 173, 166 N.W. 635 (1918). Furthermore, a client is not charged with the attorney's knowledge when circumstances render it certain or probable that the attorney will disregard the duty to communicate the material facts to his client. *Farnsworth* v. *Hazelett,* 197 Iowa 1367, 1373, 199 N.W. 410 (1924); *Farr* v. *Newman,* 14 N.Y.2d 183, 190–91, 250 N.Y.S.2d 272 (1964); *Florence* v. *De Beaumont,* 101 Wash. 356, 364, 172 P. 340 (1918); *Melms* v. *Pabst Brewing Co.,* 93 Wis. 153, 169–70, 66 N.W. 518 (1896); 7A C.J.S., Attorney & Client § 182. Specifically, a purchaser of real property is not chargeable with knowledge of frauds against him committed by his attorney. *Goerz* v. *Barstow,* 148 F. 562, 575 (5th Cir. 1906); 7A C.J.S., Attorney & Client § 183 n.72.

The defendant claims, however, that the knowledge of the plaintiff's attorney should be imputed to the plaintiff because of the following exception to the exception just cited: "The principal is affected by the knowledge of an agent who acts adversely to

the principal: (a) if the failure of the agent to act upon or to reveal the information results in a violation of a contractual or relational duty of the principal to a person harmed thereby . . . ." 1 Restatement (Second), Agency § 282 (2) (a). Without deciding if the plaintiff violated a contractual or relational duty owed to the defendant, we have no evidence indicating that the defendant has been harmed. The court ordered specific performance of the contract only after the plaintiff paid the agreed purchase price. He has not been damaged and will receive what he has bargained for, i.e., a sum certain given in consideration for the title to his property. The exception to the exception does not apply to the facts in this case.

The defendant's reliance on *Ridgefield Savings Bank* v. *Sherwood*, 91 Conn. 648, 100 A. 1063 (1917), is misplaced. The issue in that case was whether a principal-agent relationship existed, not the imputation of an agent's knowledge to his principal.

### III

The defendant's third claim of error pertains to the court's rulings that testimony offered by him was not relevant. On appeal, the defendant claims the evidence was relevant (1) to the true reasons for the closing delays between the signing of the agreement and the February 14, 1977 stipulation; (2) to the imputing to the plaintiff of the knowledge of his then attorney's misappropriation of the funds; (3) to the voidability of the February 14, 1977 stipulation because agreement to it had been procured by fraud; (4) to the reasonableness of the delay between the February 14, 1977 stipulation and the proposed March 7, 1977 closing date; and (5) to the equities of the case. Since the defendant at

trial limited his claim of relevancy only to the claim that the excluded testimony proved the true reasons for the closing delays, we must likewise limit our review of the court's ruling to the same claim. "If trial counsel intended to show what counsel on appeal now claims, it was his duty to inform the court of his purpose and the grounds therefor at the time of the ruling. Practice Book [1963] § 226; *Birgel* v. *Heintz,* 163 Conn. 23, 36, 301 A.2d 249 [1972]; *Acampora* v. *Ledewitz,* 159 Conn. 377, 381, 269 A.2d 288 [1970]; *Casalo* v. *Claro,* 147 Conn. 625, 629, 165 A.2d 153 [1960]." *State* v. *Clemente,* 166 Conn. 501, 523, 353 A.2d 723 (1974); see Practice Book §§ 288 (formerly Practice Book, 1963, § 226) and 3063.

"Relevant evidence is evidence which has a logical tendency to aid the trier of fact in the determination of an issue. *Pitt* v. *Kent,* 149 Conn. 351, 357, 179 A.2d 626 (1962). One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. *State* v. *Blake,* 69 Conn. 64, 76, 36 A. 1019 (1897); Tait & LaPlante, Handbook of Connecticut Evidence § 8.1(a); McCormick, Evidence § 185." *Berndston* v. *Annino,* 177 Conn. 41, 43, 411 A.2d 36 (1979).

The defendant is correct that the testimony was improperly excluded. The true reasons for the closing delays were related to the issue of the plaintiff's knowledge. To require reversal, however, the court's error must be harmful. *State* v. *Runkles,* 174 Conn. 405, 413, 389 A.2d 730, cert. denied, 439 U.S. 859, 99 S. Ct. 177, 58 L. Ed. 2d 168 (1978). In this case, the court heard other testimony pertaining to the true reasons for the closing postponements

and, in fact, resolved in favor of the defendant the issue to which the excluded evidence was claimed to be addressed. Therefore, the error is harmless. See *State* v. *Colton*, 174 Conn. 135, 138–39, 384 A.2d 343 (1977); *State* v. *Kinsey*, 173 Conn. 344, 347 n.1, 377 A.2d 1095 (1977).

## IV

The last error raised by the defendant is that the court erred in ordering specific performance of the terms of the contract. On cross appeal, the plaintiff claims that it was error not to award damages in addition to specific performance. These issues may be considered together since they both involve the court's discretion.

"The availability of specific performance is not a matter of right, but depends rather upon an evaluation of equitable considerations. *Morris* v. *Costa*, 174 Conn. 592, 599, 392 A.2d 468 (1978); *Parkway Trailer Sales, Inc.* v. *Wooldridge Bros., Inc.*, 148 Conn. 21, 166 A.2d 710 (1960). The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. *Robert Lawrence Associates, Inc.* v. *Del Vecchio*, 178 Conn. 1, 18–19, 420 A.2d 1142 (1979); *Sidor* v. *Kravec*, 135 Conn. 571, 573–74, 66 A.2d 812 (1949)." *Kakalik* v. *Bernardo*, 184 Conn. 386, 395, 439 A.2d 1016 (1981).

Likewise, "[a] trial court's determination to award or to refuse damages as an incident to a decree of specific performance rests to a significant extent in the exercise of the court's discretion, 'depending upon the equities of the case and based on reason and sound judgment.' *Schneidau* v. *Manley*, 131 Conn. 285, 289, 39 A.2d 885 (1944);

*Lombardi* v. *Laudati,* 124 Conn. 569, 576, 200 A. 1019 (1938)." *Heyman* v. *CBS, Inc.,* 178 Conn. 215, 229, 423 A.2d 887 (1979) ; see *Cohen* v. *Meola,* 184 Conn. 218, 221, 439 A.2d 966 (1981) ; *Cohen* v. *Meola,* 37 Conn. Sup. 27, 34, 429 A.2d 152 (1981).

On the one hand, the defendant points to the conversion of the mortgage loan funds, the long period of time between the execution of the real estate sales agreement and the proposed March 7 closing date, and his good faith desire to close during most of this period. On the other hand, the plaintiff showed that he had no actual knowledge of the wrongful conversion by his attorney, that the defendant has had use of his deposit money and has rented the property since the execution of the agreement, that mortgage loan rates have increased and that he has remained ready, willing and able to purchase the property. The balancing of these factors is best left to the discretion of the trial court so that the most equitable remedy may be awarded. We find no abuse of discretion in its order of specific performance without any additional money damages.

There is no error.

In this opinion the other judges concurred.