CITIMORTGAGE, INC. *v.* TERRY L. COOLBETH ET AL.
(AC 35050)

DiPentima, C. J., and Bear and Borden, Js.

Argued September 19—officially released December 17, 2013

*Michael S. McKenna*, for the appellants (defendants).

*Donald E. Frechette*, with whom was *Tara L. Trifon*, for the appellee (plaintiff).

BORDEN, J. The defendants, Terry L. Coolbeth and Cheryl L. Coolbeth, appeal from the judgment of strict foreclosure following the summary judgment rendered in favor of the plaintiff, CitiMortgage, Inc. On appeal, the defendants contend that the trial court improperly granted the plaintiff's motion for summary judgment as to liability and on the defendants' counterclaim. We disagree, and accordingly affirm the judgment of the trial court.

After the commencement of this action, the plaintiff filed a motion for summary judgment, which the trial court denied because the plaintiff had not eliminated the issue of agency, raised by the defendants, as a genuine issue of material fact. Subsequently, the plaintiff filed a second motion for summary judgment with additional supporting documents and claimed that there was no remaining genuine issue of material fact as to the defendants' special defenses and counterclaim that would defeat the plaintiff's liability claim. The defendants filed an opposition in accordance with Practice Book § 17-45, and the trial court eventually granted summary judgment as to liability in favor of the plaintiff. Thereafter, the trial court rendered a judgment of strict foreclosure. This appeal followed.

The following facts, as set forth in the trial court's, *Danaher, J.*, memorandum of decision on the summary judgment motion, are relevant to our review. "On May 30, 2008, the plaintiff filed a one count complaint against the defendants, alleging that they executed a note for a loan in the amount of $396,000, secured by a mortgage on the defendants' residence at 18 April Drive in New Milford . . . . The plaintiff claims that the defendants are in default and that the plaintiff is entitled to foreclose on the property. The defendants answered the complaint on September 5, 2008, raising two special

defenses. The first special defense alleges fraud by the plaintiff and/or its agents. The second special defense asserts that the plaintiff engaged in unconscionable conduct.

"On November 12, 2008, the plaintiff moved for summary judgment, which the defendants opposed on November 26, 2008. At that time, the defendants attached an affidavit by . . . Terry [L.] Coolbeth to their memorandum in opposition to the motion for summary judgment. The affidavit was accompanied by a HUD-1 statement identifying [the defendants] as borrowers, [the plaintiff] as the lender, and the subject property as 18 April Drive in New Milford . . . .

"On December 1, 2008, [the trial court, *Pickard, J.*,] denied the [plaintiff's first] motion for summary judgment, ruling in relevant part that '[t]he viability of the first special defense depends upon whether [(New Milford Mortgage Company, LLC (mortgage broker)] and/or settlement agent were agents of the plaintiff. The plaintiff has not eliminated this as a genuine issue of material fact.'

"On January 2, 2009, the defendants filed an amended answer with two special defenses and a counterclaim. The first special defense alleges, in summary, that the defendants originally understood that the interest rate for their refinance would be 6.375 [percent]. The defendants claim that, when they arrived for the closing at the mortgage broker's office, they learned that the interest rate would actually be 9.375 [percent]. They contend that the 'mortgage broker and/or settlement agent' falsely represented that the higher rate was required due to the defendants' credit rating, and that when they paid their debts from the closing proceeds their credit rating would improve, at which time they could then obtain a lower interest rate. The defendants also claim that the plaintiff paid the mortgage broker a yield spread

premium[1] of nearly $8000 in exchange for 'selling' the defendants an interest rate that was higher than a rate for which they were actually qualified. Finally, the defendants claim that neither the plaintiff nor the mortgage broker disclosed the purpose of the yield spread premium.

"The defendants' second special defense claims that the plaintiff's conduct was unconscionable in that the plaintiff, after inducing the defendants to execute the note at the 9.375 [percent] rate, refused to communicate with the defendants regarding the interest rate, even though they understood that the rate would be reduced by three percent after three months. The defendants also claim that the plaintiff required the defendants to pay their existing credit card balances of $16,737 [held by Citibank (South Dakota), N.A. (Citibank)], but did not advise the defendants that their credit card accounts would be closed once the balances were paid off.

"In addition to the two special defenses, the defendants' amended answer includes a counterclaim. In their counterclaim, the defendants assert, generally, that the conduct described in the first special defense constitutes a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § [42-110a et seq.] . . .

"On February 16, 2011, the plaintiff filed [a] motion for summary judgment, supported by documentation regarding the note and mortgage that are [at] issue, as

---

[1] A yield spread premium is an indirect payment from a lender to a broker based on the rate of the borrower's loan. It "is calculated based upon the difference between the interest rate at which the broker originates the loan and the par, or market, rate offered by a lender." Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8 (b), 66 Fed. Reg. 53,052, 53,054 (October 18, 2001).

well as other materials, including an affidavit by Deborah Guffey, who identifies herself as a default litigation specialist for the plaintiff. On September 29, 2011, the defendants filed their objection to the motion for summary judgment. However, rather than presenting any evidence that responds to the facts alleged in Guffey's affidavit or any other exhibit offered by the plaintiff, the defendants merely referred to the affidavit and HUD-1 statement that they filed on November 26, 2008."

The trial court found that the defendants failed to raise a genuine issue of material fact with respect to the existence of an agency relationship among the plaintiff, the mortgage broker, and Citibank, and accordingly, granted the plaintiff's motion for summary judgment as to liability and as to the defendants' counterclaim.

In this appeal, the defendants claim that the trial court improperly granted summary judgment in favor of the plaintiff as to liability on the defendants' special defenses and their counterclaim because there existed a genuine issue of material fact as to whether the mortgage broker and Citibank were acting as agents of the plaintiff. We disagree.

At the outset, we note that we agree with the trial court's determination that the plaintiff "established a prima facie case for mortgage foreclosure" because the defendants did not contest that they defaulted on a note and mortgage held by the plaintiff. See *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 177, 73 A.3d 742 (2013). Accordingly, the only issue before this court is whether the defendants raised a genuine issue of material fact as to their special defenses and counterclaim. Because the defendants' special defenses and counterclaim involve "substantially the same conduct," we will follow the trial court's approach and analyze them together.

Fraud and unconscionability are well recognized special defenses in foreclosure actions. See *Fidelity Bank v. Krenisky*, 72 Conn. App. 700, 705–706, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002). "Fraud involves deception practiced in order to induce another to act to her detriment, and which causes that detrimental action. . . . The four essential elements of fraud are (1) that a false representation of fact was made; (2) that the party making the representation knew it to be false; (3) that the representation was made to induce action by the other party; and (4) that the other party did so act to her detriment. . . . Because specific acts must be pleaded, the mere allegation that a fraud has been perpetrated is insufficient." (Citation omitted; internal quotation marks omitted.) *Chase Manhattan Mortgage Corp. v. Machado*, 83 Conn. App. 183, 188, 850 A.2d 260 (2004).

"The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise. . . . As applied to real estate mortgages, the doctrine of unconscionability draws heavily on its counterpart in the Uniform Commercial Code which, although formally limited to transactions involving personal property, furnishes a useful guide for real property transactions. . . . As Official Comment 1 to § 2-302 of the Uniform Commercial Code suggests, [t]he basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . The determination of unconscionability is to be made on a case-by-case basis, taking into account all of the relevant facts and circumstances." (Citations omitted; internal quotation marks omitted.) *Cheshire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 88–89, 612 A.2d 1130 (1992).

Additionally, with respect to CUTPA, our Supreme Court has "adopted the criteria set out in the cigarette rule by the [F]ederal [T]rade [C]ommission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen]. . . .

"All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA." (Citations omitted; internal quotation marks omitted.) Id., 105–106.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . .

and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Sic* v. *Nunan*, 307 Conn. 399, 406, 54 A.3d 553 (2012).

In accordance with Practice Book § 17-45,[2] the plaintiff provided numerous documents in support of its motion for summary judgment.[3] Most notably, the plaintiff submitted the affidavit of Guffey, dated February 16, 2011, which expressly disavowed the existence of an agency relationship between the plaintiff and the mortgage broker and Citibank. As summarized by the trial court, Guffey "assert[ed] that the plaintiff does not employ, and has no agency relationship with . . . the mortgage broker that handled the defendants' loan. [She] also assert[ed] that the plaintiff is a separate and distinct entity from Citibank, which maintained the defendants' credit card accounts. Guffey aver[red] that the plaintiff did not close or otherwise take any action with regard to the defendants' credit card accounts."[4]

---

[2] Practice Book § 17-45 provides in relevant part: "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like."

[3] The plaintiff submitted "copies of the note . . . the mortgage deed . . . the notice of default and intent to accelerate . . . the truth in lending disclosure . . . the notice of the right to cancel . . . defendants' responses to plaintiff's requests for admissions . . . the Connecticut Secretary of State filing for New Milford Mortgage Company, LLC . . . and the defendants' acknowledgment of application and authorization given to New Milford Mortgage Company, LLC . . . ."

[4] Guffey's affidavit, in pertinent part, states:

"15. CitiMortgage, Inc. does not employ and has no agency relationship with the entity known as New Milford Mortgage Company, LLC through which the Defendants applied for a residential refinance loan transaction. New Milford Mortgage Company, LLC is a separate and distinct legal entity which is incorporated in the State of Connecticut which entity is not wholly or partly owned, employed or contracted with by CitiMortgage, Inc. on a permanent basis. CitiMortgage, Inc. has conveyed no authority to this entity

Additionally, the plaintiff submitted a copy of the mortgage broker's corporate filing with the Secretary of State, which does not exhibit an affiliation between the plaintiff and the mortgage broker or any other entity. The plaintiff also submitted a copy of the defendants' response to its request for admissions, wherein the defendants admit that "it was Terry [L.] Coolbeth and Cheryl [L.] Coolbeth who sought out and engaged the services of the 'mortgage broker' set forth in the pleaded First Defense to arrange for the re-financing of the subject property."

On the basis of this evidence, we agree with the trial court's determination that the plaintiff satisfied its burden of demonstrating the absence of a genuine issue of material fact with respect to an agency relationship between the plaintiff and the mortgage broker and Citibank. Thus, we next consider whether the defendants raised a genuine issue of material fact as to the existence of an agency relationship in their opposition to the plaintiff's motion for summary judgment. See *Sic* v. *Nunan*, supra, 307 Conn. 406.

The existence of an agency relationship is critical to the viability of the defendants' special defenses and counterclaim, insofar as the special defenses and counterclaim are primarily directed toward the representations and actions of the mortgage broker and Citibank— not the plaintiff. See *Barasso* v. *Rear Still Hill Road, LLC*, 81 Conn. App. 798, 805, 842 A.2d 1134 (2004) (finding that viability of defendant's special defenses to

to bind CitiMortgage, Inc. with any representation or statement pertinent to the underlying loan instruments aside from the express terms set forth within the instruments themselves.

"16. CitiMortgage, Inc. is a separate and distinct entity from the personal credit division of Citibank (South Dakota), N.A. and cannot close or otherwise unilaterally alter the terms of a credit agreement between the borrower and Citibank (South Dakota), N.A. The plaintiff has not closed or otherwise taken any action with respect to the Defendant's credit accounts with Citibank (South Dakota), N.A. as alleged within the pleaded defenses."

mortgage foreclosure depended on existence of agency relationship). "[P]ursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . .

"Moreover, [t]o establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact. . . . Mere statements of legal conclusions . . . and bald assertions, without more, are insufficient to raise a genuine issue of material fact capable of defeating summary judgment." (Internal quotation marks omitted.) *Callender* v. *Reflexite Corp.*, 143 Conn. App. 351, 365–66, 70 A.3d 1084, cert. denied, 310 Conn. 905, 75 A.3d 32 (2013).

The only evidence that the defendants submitted in opposition to the plaintiff's motion for summary judgment as to liability and the defendants' counterclaim was the affidavit of Terry L. Coolbeth and a HUD-1 statement. Taking each document in turn, we first conclude that the affidavit of Terry L. Coolbeth fails to raise a genuine issue of material fact with respect to an agency relationship between the plaintiff and the mortgage broker and Citibank. Affidavits supporting or opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Practice Book § 17-46.

Terry L. Coolbeth's affidavit is rooted in surmise and therefore fails to raise a genuine issue of material fact. We agree with the trial court's analysis of his averments: "[First, the affiant, Terry L. Coolbeth] alleges that when the defendants applied for a mortgage '[they] were advised that the interest rate would be 6.375 [percent].' The affiant, however, does not indicate that the plaintiff gave him this information, nor does he identify how he came by this information. [Second] [t]he affiant alleges that the 'mortgage broker and settlement agent' told the defendants that the higher interest rate was required and they would be able to refinance again in three months at a lower rate after paying their debts from the mortgage proceeds. The affiant, however, does not claim that the plaintiff played any role in giving him the latter information.

"[Third] [t]he affiant asserts that the plaintiff paid the mortgage broker a 'yield spread premium' for 'selling' the defendants a higher rate than the rate to which they were actually entitled. The affiant, however, does not identify the source of this assertion that the yield spread premium payment was conditioned on the broker 'selling' an interest rate higher than that for which the defendants were qualified. In the absence of some explanation as to the source of this information, the affiant would not be able to testify, at trial, as to the nature of the yield spread premium arrangement between the plaintiff and the mortgage broker.

"[Fourth] [t]he affiant claims that the plaintiff paid the mortgage broker a premium of several thousand dollars for convincing the defendants to take a loan at the higher interest rate. The HUD-1 statement attached to the defendants' affidavit does, indeed, show[s] a 'broker premium from CMI To: New Milford Mortgage Company, LLC POC $7,920.' It may well be true that the mortgage broker received a higher premium if he 'sold' a loan at 9.375 [percent] as opposed to 6.375 [percent].

Nonetheless, neither the affidavit nor the HUD-1 statement explains, first, how the affiant would be able to offer testimony to the latter effect at trial or, second, why such a premium, in and of itself, supports a claim of fraud, unconscionable conduct, or a violation of CUTPA.

"[Fifth] [t]he affiant claims to have 'found out' after the foreclosure action was initiated that the 'premium' paid by the plaintiff to the mortgage broker was for convincing the defendants to agree to an interest rate that was higher than a rate for which they were qualified. As before, the affiant does not identify the source of his information nor is there an explanation as to how this alleged information would be admitted at trial. . . .

"Finally, the affiant claims that at the closing he was required to pay off his existing credit card balances with Citibank. The HUD-1 [statement] supports this claim. The affiant claims that the mortgage broker— not the plaintiff—told the defendants that paying off their credit cards with Citibank would improve their credit score, allowing a lower interest rate. After they paid their credit card debts, the affiant claims that 'the bank' unilaterally closed their credit card accounts. The affiant claims that neither the plaintiff nor the broker told them that the accounts would be closed." (Footnotes omitted.)

Terry L. Coolbeth's affidavit rests on unsubstantiated representations of fact that would not be admissible at trial. Moreover, he failed to controvert Guffey's averments that neither the mortgage broker nor Citibank are agents of the plaintiff. We therefore conclude that the trial court properly found that Terry L. Coolbeth's affidavit failed to raise a genuine issue of material fact.

In addition to Terry L. Coolbeth's affidavit, the defendants also relied upon a HUD-1 statement in support of their special defenses and counterclaim. Specifically,

the defendants argued that the "Broker Premium From CMI to New Milford Mortgage Company, LLC POC" of $7920, denoted in line 809 of the HUD-1 statement, was in fact a "yield spread premium" paid by the plaintiff to the mortgage broker as a quid pro quo for "selling" the defendants an interest rate three percentage points above their qualifying rate.

The trial court noted that "[i]t may well be true that the mortgage broker received a higher premium if he 'sold' a loan at 9.375 [percent] as opposed to 6.375 [percent]." Nevertheless, the HUD-1 statement fails to explain "how the affiant would be able to offer testimony to the latter effect at trial or, second, why such a premium, in and of itself, supports a claim of fraud, unconscionable conduct, or a violation of CUTPA." We agree with the trial court's analysis.

First, the defendants failed to produce any evidence that their credit score qualified them for a loan at 6.375 percent. This evidence is critical to their claim that the plaintiff fraudulently induced them into a mortgage loan at 6.375 percent, only to have the mortgage broker charge a 9.375 percent rate at the closing. This court cannot infer such a bait and switch where the defendants have not presented any evidence of the bait.

Further, assuming without deciding that a "yield spread premium" would be sufficient to raise a genuine issue of material fact as to an agency relationship between the plaintiff and the mortgage broker, we conclude that the defendants have failed to produce any evidence demonstrating that the $7920 payment made by the plaintiff to the mortgage broker was actually a yield spread premium.[5] The HUD-1 statement identifies

---

[5] The defendants rely on the prohibition of yield spread premiums within the Dodd-Frank Wall Street Reform and Consumer Protection Act (act), 15 U.S.C. § 1639b (c), enacted in 2010, as per se evidence of fraud and a CUTPA violation. The defendants do not claim that the act retroactively applies to their 2007 mortgage loan, but instead, contend that the act supports the proposition that yield spread premiums violate public policy. Although we

the $7920 sum as a "[b]roker premium"—not a "yield spread premium" as the defendants purport. This court cannot infer from the defendants' bare assertions that the broker premium was in fact a yield spread premium. See *Norse Systems, Inc.* v. *Tingley Systems, Inc.*, 49 Conn. App. 582, 591, 715 A.2d 807 (1998) ("a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment" [internal quotation marks omitted]).

Additionally, the defendants did not produce any evidence demonstrating how the $7920 sum was calculated. At oral argument before this court, counsel for the defendants argued that "yield spread premium" is a defined term, whereby the lender pays the broker a fixed percentage of the loan in exchange for charging the buyer a higher interest rate. Despite the availability of the full panoply of discovery tools, however, the defendants did not gather any admissible evidence demonstrating the basis for this payment. For example, the defendants could have submitted interrogatories or requested production of documents demonstrating the purpose of the broker premium and how it was calculated. Similarly, the defendants could have produced evidence of the 2007 market rate for mortgage broker

---

need not decide the issue, this court notes that, contrary to the defendants' contentions, yield spread premiums may, in some cases, be beneficial to homebuyers. According to the Department of Housing and Urban Development, "[o]ne of the primary barriers to homeownership and homeowners' ability to refinance and lower their housing costs is the up front cash needed to obtain a mortgage. . . . Yield spread premiums permit homebuyers to pay some or all of the up front settlement costs over the life of the mortgage through a higher interest rate." Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8 (b), 66 Fed. Reg. 53,052, 53,053–54 (October 18, 2001). Therefore, even if the defendants presented sufficient evidence to demonstrate that the $7920 sum was a yield spread premium, this evidence, taken by itself and viewed in the light most favorable to the defendants, would still be insufficient to raise a genuine issue of material fact.

premiums in order to demonstrate that the $7920 payment exceeded that rate. Absent this or any other evidence, this court cannot infer that the payment of $7920 amounted to fraud, unconscionability, or a CUTPA violation.

The defendants ultimately ask this court to "connect the dots" and infer fraud, unconscionability, and a CUTPA violation through unsupported averments. It is not within the province of this court to "connect the dots," but rather, it is the defendants' burden to present a genuine issue of material fact as to the purported illegality by way of admissible evidence. They have failed to do so.

The judgment is affirmed and the case is remanded for the purpose of setting a new law day.

In this opinion the other judges concurred.