******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BANK OF AMERICA, N.A. *v.* WILLIAM
GONZALEZ ET AL.
(AC 40405)

Sheldon, Prescott and Pellegrino, Js.

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain real property owned by the defendant G. In response, G filed an answer and six special defenses, each of which alleged misconduct by B, a mortgage broker who allegedly was an employee or agent of the original lender and mortgagee, M Co. Following a trial, the trial court rendered a judgment of strict foreclosure. In reaching its decision, the court rejected G's special defenses, finding that he had not satisfied his burden of proving that B was an agent or employee of M Co. On G's appeal to this court, *held* that the trial court correctly concluded that G could not prevail on his special defenses, as that court's finding that B was not an agent or employee of M Co. was not clearly erroneous and the existence of the agency relationship between B and M Co. was critical to the viability of G's special defenses; G failed to produce evidence to establish that B was an agent or employee of M Co. or that he was acting with its apparent authority, and although G argued that M Co. communicated with him exclusively through B and that M Co. had the power to control the means by which such communications were to be made, there was no evidence that M Co. knew of or promoted the line of communication between B and G, and there was no evidence indicating that G knew of or relied on any statement or action of M Co. when he entered into the subject transaction, especially given that G testified that he did not learn that M Co. was the lender until the date of the closing.

Argued October 24, 2018—officially released January 29, 2019

*Procedural History*

Action to foreclose a mortgage on certain real property of the named defendant, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Hon. Michael Hartmere*, judge trial referee; judgment of strict foreclosure, from which the named defendant appealed to this court. *Affirmed.*

*Ridgely Whitmore Brown*, with whom, on the brief, was *Benjamin Gershberg*, for the appellant (named defendant).

*Pierre-Yves Kolakowski*, for the appellee (plaintiff).

*David Lavery* filed a brief for the Connecticut Fair Housing Center as amicus curiae.

*Opinion*

PELLEGRINO, J. The defendant William Gonzalez[1] appeals from the judgment of strict foreclosure rendered by the trial court in favor of the plaintiff, Bank of America, N.A. On appeal, the defendant claims that the court erred by concluding that he had failed to satisfy his burden of proving that the mortgage broker was an agent or employee of the original mortgagee and concluding, on that basis, that he had failed to prove any of his special defenses, all of which were based on the alleged conduct of the broker. The defendant further claims that the trial court incorrectly concluded that he had failed to sustain his burden of proving that the mortgage was unconscionable.[2] We disagree with the defendant and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the defendant's claims on appeal. The plaintiff filed this action in August, 2013, seeking to foreclose a residential mortgage on property located at 80 Oakwood Street in Bridgeport. According to the complaint, on March 20, 2006, the defendant executed the mortgage in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Mortgage Capital Group, LLC (Mortgage Capital), as security for a $267,750 promissory note payable to the order of Mortgage Capital. The complaint alleged that the note was in default and that the plaintiff, which was in possession of the note, was exercising its option to declare the entire balance of the note due and payable.

On June 25, 2015, the defendant filed an amended answer and six special defenses. The special defenses alleged fraudulent inducement, negligent misrepresentation, equitable estoppel, unconscionability, duress and unclean hands. Each of the special defenses alleged misconduct by David J. Bigley, an alleged employee and/or agent of the original lender and mortgagee, Mortgage Capital.[3] On May 5, 2016, the plaintiff filed its reply, denying each of the defendant's special defenses. Following a trial on April 18 and 19, 2017, the court rendered a judgment of strict foreclosure.[4] In its oral decision, the court found that the plaintiff had presented prima facie evidence to support the judgment of strict foreclosure. The court rejected the defendant's special defenses, finding that the defendant had not satisfied his burden of proving that Bigley was an agent or employee of Mortgage Capital. The defendant then filed the present appeal.

We first set forth our standard of review. "The standard of review of a judgment of . . . strict foreclosure is whether the trial court abused its discretion. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our

review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Bank of New York Mellon* v. *Talbot*, 174 Conn. App. 377, 382, 165 A.3d 1253 (2017).

"In order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied." (Internal quotation marks omitted.) *U.S. Bank, N.A.* v. *Foote*, 151 Conn. App. 620, 632, 94 A.3d 1267, cert. denied, 314 Conn. 930, 101 A.3d 952 (2014). In its decision, the trial court noted that there was no disagreement that the plaintiff had established a prima facie case. On appeal, the defendant has not challenged the plaintiff's standing as the owner of the note and mortgage or the defendant's default on the note. We, therefore, limit our review to the issues raised by the defendant concerning his special defenses.

"Where the plaintiff's conduct is inequitable, a court may withhold foreclosure on equitable considerations and principles. . . . [O]ur courts have permitted several equitable defenses to a foreclosure action. [I]f the mortgagor is prevented by accident, mistake or fraud, from fulfilling a condition of the mortgage, foreclosure cannot be had . . . ." (Internal quotation marks omitted.) *Hirsch* v. *Woermer*, 184 Conn. App. 583, 588, 195 A.3d 1182, cert. denied, 330 Conn. 938, 195 A.3d 384 (2018). The defendant bears the burden of proof on his or her special defenses. *Kaye* v. *Housman*, 184 Conn. App. 808, 817, 195 A.3d 1168 (2018).

The defendant argues that the court erred in concluding that he had failed to prove that Bigley was an agent or employee of the original mortgagee, Mortgage Capital.[5] Each of the special defenses alleged that Bigley, as an agent or employee of Mortgage Capital, induced the defendant to enter into this mortgage transaction. In order to prevail on these special defenses, therefore, the defendant was required to prove that Bigley was an agent or employee of Mortgage Capital. See *CitiMortgage, Inc.* v. *Coolbeth*, 147 Conn. App. 183, 192, 81 A.3d 1189 (2013), cert. denied, 311 Conn. 925, 86 A.3d 469 (2014). "The existence of an agency relationship is a question of fact . . . which may be established by circumstantial evidence based upon an examination of the situation of the parties, their acts and other relevant information." (Citation omitted; internal quotation marks omitted.) *Gagliano* v. *Advanced Specialty Care, P.C.*, 329 Conn. 745, 755, 189 A.3d 587 (2018). We review the trial court's findings of fact under the clearly erroneous standard of review. *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 157 Conn. App.

139, 158, 117 A.3d 876, cert. denied, 318 Conn. 902, 122 A.3d 631 (2015) and 318 Conn. 902, 123 A.3d 882 (2015). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 507–508, 4 A.3d 288 (2010).

"Three elements are required to show the existence of an agency relationship: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. . . . Although stated as a three part test, [our Supreme Court] has also acknowledged there are various factors to be considered in assessing whether [an agency] relationship exists [which] include: whether the alleged principal has the right to direct and control the work of the agent; whether the agent is engaged in a distinct occupation; whether the principal or the agent supplies the instrumentalities, tools, and the place of work; and the method of paying the agent. . . . In addition, [a]n essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal." (Citation omitted; internal quotation marks omitted.) *Gagliano* v. *Advanced Specialty Care, P.C.*, supra, 329 Conn. 755.

Additionally, "[a]pparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses. . . . Apparent authority thus must be determined by the acts of the principal rather than by the acts of the agent. . . . Furthermore, the party seeking to impose liability upon the principal must demonstrate that it acted in good faith based upon the actions or inadvertences of the principal." (Citations omitted; internal quotation marks omitted.) *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 120, 140–41, 464 A.2d 6 (1983).

At trial, the defendant testified that after he received an inheritance from his brother's estate, he consulted his friend, Vincent Curcio, who recommended that he purchase the subject property. Curcio also referred the defendant to Attorney Thomas V. Battaglia, Jr., to represent him in the purchase of the property. Bigley, a mortgage broker doing business as Main Street Mortgage, LLC, assisted the defendant with securing financing to purchase the house.[6] Bigley obtained a lender, Mortgage Capital, who was not disclosed to the defendant until the date of the closing.

The defendant testified that he paid $40,000 as a deposit on the property. He testified that when he first

met Bigley, he told Bigley that he could only afford a mortgage in the amount of $1250 per month. On the date of the closing, however, he was told that his monthly payment would be $2618.16 per month and that if he did not proceed with the transaction, he would lose $20,000 of his deposit. At that point, Bigley agreed to loan the defendant the shortfall of $16,000 to complete the closing. The defendant was not informed that Bigley held a mortgage on the property from Sunrise Contracting, LLC, the seller of the property, in the amount of $249,600, that would be paid off with the proceeds of the sale to the defendant. The mortgage from Sunrise Contracting, LLC, to Bigley was witnessed by Battaglia who, unbeknownst to the defendant, was Bigley's cousin.[7]

In addition to the defendant's testimony, the court considered several exhibits that were admitted into evidence. Specifically, the mortgage loan origination agreement, signed by the defendant on January 30, 2006, identified Main Street Mortgage, LLC, as an independent contractor and licensed mortgage broker under the laws of the state of Connecticut. This document provided in relevant part: "In connection with this mortgage loan we are acting as an independent contractor and not as your agent. We will enter into separate independent contractor agreements with various lenders." Similarly, the mortgage broker fee disclosure, signed by the defendant on January 30, 2006, provided in relevant part: "The mortgage broker will submit your application for a residential mortgage loan to a participating lender with which it from time to time contracts upon such terms and conditions as you may request or a lender may require. . . . The mortgage broker may be acting as an independent contractor and not as your agent. If you are unsure of the nature of your relationship, please ask the mortgage broker for clarification. . . . The mortgage broker has entered into separate independent contractor agreements with various lenders." Finally, the mortgage broker fee disclosure also provided: "You may work with the mortgage broker to select the method [by] which it receives its compensation depending on your financial needs, subject to the lender's program requirements and credit underwriting guidelines." The "Good Faith Estimate," also signed by the defendant on January 30, 2006, provided that it was "being provided by Main Street Mortgage, LLC, a mortgage broker, and no lender has yet been obtained."

On cross-examination, the defendant testified that he had no evidence that Mortgage Capital set Bigley's hours or supplied any office supplies to Bigley. He further testified that he had no evidence that Mortgage Capital provided or told Bigley who to get as customers. Finally, the defendant testified that he did not read any of the closing documents.

In its oral decision at the conclusion of the trial,

the court stated: "The defenses basically rely on an allegation that Bigley induced the defendant to enter into this mortgage. In order to prove each or any of the special defenses, the defendant had to prove that Bigley [was] an agent or employee of the originating lender, the originating lender being Mortgage Capital . . . [and] the court will find that the evidence showed that Bigley, at that time, was not an agent or employee of Mortgage Capital . . . . Bigley acted as an independent contractor who worked for and owned, according to Battaglia's statement, Main Street Mortgage, LLC, and that's who Bigley was working for. The defendant, in order to make out or prove any of these special defenses, had to establish a link, connection between Bigley, the broker, and the lender. And the evidence, credible evidence, just didn't show that."

The court further stated that Mortgage Capital "had little control over the actions of . . . Bigley. Bigley was not acting for the sole benefit of [Mortgage Capital] and [it] did not . . . provide the instrumentalities, the tools, or place of work for the broker and all of that tends to prove the lack of an agency relationship." The court continued by stating that "another important factor . . . is that neither the plaintiff nor [Mortgage Capital], according to the evidence, told the defendant anything. All the allegations, which [the defendant] testified to, are against Bigley, and there's no evidence that the plaintiff or [Mortgage Capital] made any representations to [the defendant] at all. Now the court is not unsympathetic to the position and the predicament that [the defendant] found himself in, but based upon the evidence and the credible evidence that's been presented, again, the . . . special defenses simply aren't supported. And the fact that [the defendant] has testified that he didn't read these various documents is not a defense."[8]

In support of its decision, the court relied on *CitiMortgage, Inc.* v. *Coolbeth*, supra, 147 Conn. App. 183. In that case, the trial court granted the plaintiff's motion for summary judgment as to liability on its complaint and as to the defendants' special defenses and counterclaim, which alleged fraud and unconscionable conduct by the plaintiff. Id., 188. The court concluded that the defendants had failed to raise a genuine issue of material fact with respect to the existence of an agency relationship among the plaintiff, the mortgage broker, and Citibank, which maintained the defendants' credit card accounts. Id. In affirming the judgment of the trial court, this court stated: "The existence of an agency relationship is critical to the viability of the defendants' special defenses and counterclaim, insofar as the special defenses and counterclaim are primarily directed toward the representations and actions of the mortgage broker and Citibank—not the plaintiff." Id., 192, citing *Barasso* v. *Rear Still Hill Road, LLC*, 81 Conn. App. 798, 805, 842 A.2d 1143 (2004).

On the basis of our review of the evidence in the present case, we agree that the defendant did not produce evidence to establish that Bigley was an agent or employee of Mortgage Capital, or that he was acting with its apparent authority. Although the defendant argues that Mortgage Capital communicated with him exclusively through Bigley and that Mortgage Capital had the power to control the means by which such communications were to be made, there is no evidence that it knew of or promoted the line of communication between Bigley and the defendant. Furthermore, there is no evidence indicating that the defendant knew of or relied upon any statement or action of Mortgage Capital when he entered into the transaction at issue; the defendant, rather, testified that he did not learn that Mortgage Capital was the lender until the date of the closing. "It is not within the province of this court to 'connect the dots' " to find that Bigley was an agent of Mortgage Capital. *CitiMortgage, Inc.* v. *Coolbeth*, supra, 147 Conn. App. 198. We cannot say, therefore, that the trial court's finding that Bigley was not an agent or employee of Mortgage Capital was clearly erroneous. Because the existence of the agency relationship was critical to the viability of the defendant's special defenses; id., 192; the court correctly concluded that the defendant could not prevail on his special defenses.[9]

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] David J. Bigley and the state of Connecticut also were named as defendants but are not parties to this appeal. We therefore refer in this opinion to Gonzalez as the defendant.

[2] The Connecticut Fair Housing Center, as amicus curiae, also argues that multiple indicia of fraud are present in this case and that the subject transaction has many of the hallmarks of a "property flip fraud" as described by the white paper prepared by the Federal Financial Institutions Examination Council. Because the defendant did not allege, and the court did not find, that this was a fraudulent property flip, we decline to review this issue.

[3] The special defenses alleged that Mortgage Capital, through its employees and/or agents, including, but not limited to, Bigley, falsely represented to the defendant that his monthly mortgage payment would be $1200 per month and later informed him that it would be $2165 per month; falsely represented to the defendant that the total closing costs would be $9000 but then demanded an additional $16,000 in closing costs; falsely informed the defendant that if he did not pay the additional $16,000 in closing costs and enter into the mortgage transaction, he would forfeit his deposit of $20,000; failed to disclose that Bigley had a second mortgage on the property that would be paid off as part of the closing on the defendant's property; failed to disclose that the attorney that the defendant hired was Bigley's cousin; and failed to disclose that the appraiser who conducted the appraisal for Mortgage Capital was Bigley's brother.

[4] This matter was previously tried to the court, *Hon. Richard P. Gilardi*, judge trial referee, but the court failed to render a decision within 120 days as required by General Statutes § 51-183b. The matter was then reassigned to the court, *Hon. Michael Hartmere*, judge trial referee.

[5] The defendant also argues that the court erred in concluding that he had failed to prove that Attorney Thomas V. Battaglia, Jr., was an agent or employee of Mortgage Capital. The defendant's special defenses, however, were all premised on the allegation that Bigley was an agent or employee of Mortgage Capital. The special defenses did not allege that Battaglia was an agent or employee of Mortgage Capital. Furthermore, the court's decision focused solely on whether Bigley was an agent or employee of Mortgage

Capital, and did not make a finding regarding whether Battaglia was an agent or employee of Mortgage Capital. The defendant did not file a motion for articulation regarding whether Battaglia was an agent or employee of Mortgage Capital. "Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us . . . would be entirely speculative." (Internal quotation marks omitted.) *Bayview Loan Servicing, LLC* v. *Park City Sports, LLC*, 180 Conn. App. 765, 781, 184 A.3d 1277, cert. denied, 330 Conn. 901, 192 A.3d 426 (2018). We, therefore, limit our consideration of this issue to the court's conclusion that the defendant had failed to prove that Bigley was an agent or employee of Mortgage Capital.

[6] According to the statement of Battaglia, which was admitted into evidence, Curcio referred the defendant to Main Street Mortgage, LLC, which was owned by Bigley.

[7] The defendant filed a prior action against Bigley and Battaglia based on the same underlying transaction, but the trial court, *Sommer, J.*, rendered summary judgment in favor of the defendants on the ground that the action was time barred.

[8] The court further stated: "[T]he defendant . . . signed off on these various documents and whether the—what credits that testimony or not, the documents speak for themselves. They were signed. Some of them signed in multiple places and multiple times, and the documents speak for themselves and . . . contradict the special defenses." According to the defendant, these statements indicate that, because the documents "speak for themselves," the court failed to consider the credibility of the defendant's testimony in light of all of the evidence presented. We disagree with the defendant's narrow reading of the court's decision, which states that "based upon the . . . credible evidence that's been presented," the defendant had not proven his special defenses.

[9] This conclusion is dispositive of the defendant's separately briefed claims that the court's finding that Bigley was not an agent of Mortgage Capital was clearly erroneous and that the court's ultimate conclusion that he had failed to satisfy his burden of proving each of his special defenses was improper. The defendant further argues, however, that the court incorrectly concluded that he had failed to sustain his burden of proving that the mortgage was unconscionable. In support of this argument, the defendant attempts to distinguish the present case from *CitiMortgage, Inc.* v. *Coolbeth*, supra, 147 Conn. App. 183, arguing that although the alleged misrepresentations in *CitiMortgage, Inc.*, may have resulted in a mortgage that was more expensive than the borrowers originally sought, there is no indication that the mortgage in that case was completely unaffordable and would almost certainly result in a default and foreclosure. The defendant further points out that *CitiMortgage, Inc.*, involved a refinance rather than the purchase of a home, while in this case, the defendant lost his home and the $40,000 he paid because the mortgage was completely unaffordable. Under these circumstances, the defendant argues that a finding of procedural unconscionability was not required and the status of Bigley as an agent was irrelevant. We disagree.

"The doctrine of unconscionability, as a defense to contract enforcement, generally requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . ." (Internal quotation marks omitted.) *Hirsch* v. *Woermer*, 184 Conn. App. 583, 589–90, 195 A.3d 1182, cert. denied, 330 Conn. 938, 195 A.3d 384 (2018). The trial court concluded, and we agree, that an agency relationship was required for the defendant to prevail on his special defenses, including his special defense of unconscionability, insofar as the special defense was primarily directed toward the representations and actions of Bigley. See *CitiMortgage, Inc.* v. *Coolbeth*, supra, 147 Conn. App. 192. Because the defendant did not establish that Bigley was an agent or employee of Mortgage Capital, the court correctly concluded that the defendant could not prevail on his special defense of unconscionability.

---