******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## ANTONIO ALERS *v.* BRUCE J. BEMER
## (AC 47607)

Moll, Seeley and Westbrook, Js.

*Syllabus*

The defendant appealed from the trial court's judgment for the plaintiff on the complaint and on the defendant's counterclaim, both alleging breach of contract. The parties had previously executed a settlement agreement that required the defendant to make two payments to the plaintiff and included nondisparagement and confidentiality clauses. Shortly after the defendant made the first payment, the plaintiff's attorney, F, made posts on his law firm's website and Facebook page regarding the parties' settlement. After discovering F's posts, the defendant did not make the second payment to the plaintiff, and the plaintiff filed an action for breach of contract. The defendant, alleging that F's posts breached the terms of the settlement agreement and he was therefore excused from making the second payment to the plaintiff under the agreement, filed a counterclaim. On appeal, the defendant claimed, inter alia, that the court improperly found that F was not acting as an agent of the plaintiff when he disclosed confidential information stemming from and relating to the settlement agreement on his law firm's website and Facebook page. *Held*:

The trial court's finding that the defendant failed to meet his burden of demonstrating that F was acting as the plaintiff's agent when he made the online publications was not clearly erroneous, as the record contained no evidence that F acted at the plaintiff's request, for the plaintiff's benefit or in furtherance of the business for which the plaintiff had retained him, and, therefore, the defendant's claim that the plaintiff was liable for F's conduct in breaching the terms of the settlement agreement failed.

Argued December 4, 2025—officially released May 12, 2026

*Procedural History*

Action to recover damages for breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford and transferred to the Superior Court in the judicial district of Waterbury, Complex Litigation Docket, where the defendant filed a counterclaim; thereafter, the case was tried to the court, *Bellis, J.*; judgment for the plaintiff on the complaint and on the counterclaim, from which the defendant appealed to this court. *Affirmed*.

*Corinne Burlingham*, with whom were *Brendon P. Levesque* and, on the brief, *Michael S. Taylor* and *Eric P. Anderson*, for the appellant (defendant).

*Hide Inga*, for the appellee (plaintiff).

*Opinion*

SEELEY, J. The defendant, Bruce J. Bemer, appeals from the judgment of the trial court rendered in favor of the plaintiff, Antonio Alers, in this action for breach of a settlement agreement entered into between the parties. On appeal, the defendant claims that the court improperly (1) failed to find that the plaintiff's attorney, Kevin C. Ferry, was bound by confidentiality and nondisparagement provisions in the settlement agreement, and (2) found that Attorney Ferry was not acting as an agent of the plaintiff when he disclosed confidential information stemming from and relating to the settlement agreement on his law firm's website and Facebook page. We affirm the judgment of the court.

In a joint stipulation of facts, the parties stipulated to the following facts. "In April 2017, the plaintiff . . . sued the defendant . . . alleging, inter alia, that the defendant sexually abused him when he was a minor causing him to suffer physical and emotional injuries (underlying action). . . . The plaintiff was represented by Attorney . . . Ferry in the underlying action. . . . On October 7, 2019, the defendant and the plaintiff agreed to settle the underlying action following private mediation. . . . On October 16, 2019, the parties entered into a confidential settlement agreement (settlement agreement). . . . The settlement agreement contains a confidentiality provision, which provides: 'The fact of this settlement and the terms of this [s]ettlement [a]greement are confidential. The [p]arties acknowledge that the confidentiality of this [s]ettlement [a]greement is a material term and the [p]arties would not have executed and entered into this [s]ettlement [a]greement without an unequivocal commitment by all [p]arties to keep the terms of this [s]ettlement [a]greement confidential. The [p]arties shall not disclose or cause to be disclosed any of the terms of this [s]ettlement [a]greement, directly or indirectly, orally or in writing, to any person or entity whatsoever

except such information as may be minimally required for accomplishment of the purposes of this [s]ettlement [a]greement, or for insurance, financial accounting, audit or financial statement purposes, litigation processing, information preservation, for the preparation of state and federal income tax returns, and as otherwise required by legal compulsion. If any [p]arty or such [p]arty's attorneys is/are served with a subpoena or court order requiring production of this [s]ettlement [a]greement, unless prohibited by law, that [p]arty shall immediately (and in no event more than three (3) business days after receipt of such process) notify in writing and provide the other [p]arty with a copy of the subpoena or court order before disclosing any terms of this [s]ettlement [a]greement.

"'For purposes of this [s]ection . . . notice shall be provided by mail and [email] as follows: For [the plaintiff], [Attorney] Ferry . . . . For [the defendant]: [Attorney] Ryan P. Barry . . . . Notwithstanding the above, if asked about the outcome of the [p]roposed [a]ction, a [p]arty may respond by stating the matter was resolved.' . . .

"The settlement agreement contains a nondisparagement provision, which provides: 'The [p]arties agree that they shall not make or cause to be made any disparaging statements to any person or the public or government agency which impugns the reputation, character, brand, name or integrity of any other [p]arty, or the quality of their products, services, or business practices, except good faith truthful statements made in compliance with legal reporting requirements or in response to a court order or the written directive of a government agency.' . . .

"The terms of the settlement agreement contemplated the defendant to make two payments to the plaintiff. . . . The first payment was made in a timely manner. . . . On November 15, 2019, the plaintiff withdrew the underlying action. . . . On January 8, 2020 . . . [Attorney] Ferry . . . published an article on his [law firm's (Ferry Law)] website titled, 'Bruce Bemer—settles all fifteen

lawsuits pending against him.' . . . The article stated that, '[a]pproximately fifteen different lawsuits were filed against . . . Bemer within the last two years, all surrounding allegations of sexual abuse against young men, most of [whom] were minors at the time. Upon information and belief, all fifteen lawsuits have now settled, with confidential terms and amounts for each of the lawsuits.

"'It is uncertain what prompted . . . Bemer to settle all of the pending lawsuits against him. Some may theorize it was fear of facing another bad court outcome like the criminal conviction he recently faced out of Danbury Superior Court this summer. That conviction is currently up on appeal and . . . Bemer remains out on a [$750,000] appeal bond. Others say it is to avoid the continued negative publicity surrounding these lawsuits. Perhaps it was done in order to remove the prejudgment attachments lodged against his assets to be able to secure a judgment rendered following trial. A settlement gives . . . Bemer some control over his assets, including seeking removal of some or all of the attachment[s].

"'[Ferry Law] represented three out of the fifteen victims bringing claims against . . . Bemer. All three matters have now settled. The amounts and terms remain confidential. However, each victim can feel some satisfaction that . . . Bemer has been punished criminally and compensated his victims. [Ferry Law] recently filed a new case against . . . Bemer and urges victims to continue coming forward.' . . .

"On January 10, 2020, Attorney Ferry, on his [law] firm's Facebook page, posted a link to the above article that included a photo of the defendant and the title of the article: 'Bruce Bemer—settles all fifteen lawsuits pending against him—Ferry Law Connecticut Personal Injury Lawyers.' This post contained the following: 'A victim of sexual assault who was a minor when assaulted has the right to proceed under a fictitious name to avoid public exposure. The only person who should be ashamed is the creepy looking guy below. Call us if this man abused you. We will make it right.' . . .

"The second payment [under the settlement agreement] was due April 30, 2020. . . . The defendant discovered the [previously referenced website article and Facebook posting] prior to the date the second payment was due. . . . After discovery of the publications, Attorney Barry informed Attorney Ferry that the defendant would not be making the second settlement payment. . . . The defendant did not tender the second payment to the plaintiff. . . . Prior to the second settlement payment coming due, said payment was placed in a separate interest-bearing account. Ever since, the payment has been kept in said account. . . . On April 27, 2020, the plaintiff moved in the underlying action to restore the case to the docket or, in the event that the case was still on the docket, to extend the time to withdraw until August 1, 2020. . . . On May 7, 2020, the defendant objected to the motion to restore. . . . On December 30, 2020, the court, *Welch, J.*, denied the motion to restore. . . . The plaintiff appealed, and the Appellate Court rejected all [of] the plaintiff's claims.[1] . . . After the appeal was decided, the plaintiff retained new counsel. . . . In August 2020, the plaintiff initiated this action, suing the defendant for breach of contract." (Citations omitted; emphasis omitted; footnote added.)

In a third amended complaint filed on January 30, 2023, the plaintiff, in a single count, set forth a claim for breach of contract, alleging that the defendant breached the settlement agreement by failing to make the required second payment. On August 11, 2023, the defendant filed an answer and a counterclaim for breach of contract, in which he alleged that the plaintiff, through Attorney Ferry, disclosed confidential information in violation of the confidentiality provision of the settlement agreement and that, as a result of that breach of a material term of the settlement agreement, the defendant was excused from "any and all performance owed to the plaintiff . . . ." The defendant also alleged that he suffered damages as a result of the plaintiff's breach of the settlement agreement.

---

[1] See *Doe* v. *Bemer*, 215 Conn. App. 504, 283 A.3d 1074 (2022).

The parties initially requested that the court decide the matter on the basis of cross motions for summary judgment and the joint stipulation of facts and exhibits attached to it, which included the settlement agreement and copies of the online postings of Attorney Ferry. On December 4, 2023, the court heard argument from the parties. At that proceeding, the court informed the parties that it would adjudicate the matter on the basis of argument, the joint stipulation of facts with attached exhibits, and postargument briefs, rather than the motions for summary judgment. Both parties filed postargument briefs on January 10, 2024.

In a memorandum of decision dated April 11, 2024, the court found in favor of the plaintiff on his breach of contract claim and with respect to the defendant's counterclaim. The court set forth the parties' positions and the central issue of the case as follows: "The defendant argues that the plaintiff breached the settlement agreement when Attorney Ferry published the terms of the settlement agreement and publicly disparaged the defendant on his [law firm's] website and Facebook page, thereby discharging the defendant from any further duty to perform. In response, the plaintiff argues that Attorney Ferry was not a party to the settlement agreement, nor did he intend to be bound by the confidentiality and/or nondisparagement provisions of the settlement agreement, so he could not have breached the contract. Therefore, the plaintiff argues, the defendant breached the settlement agreement by failing to make the second payment when it became due. The heart of this case centers around whether the acts of a party's attorney can be attributed to that party in breaching a settlement agreement, therefore discharging a defendant from any further duty to perform under the contract."

The court first addressed whether Attorney Ferry was bound by the provisions of the settlement agreement. In concluding that he was not so bound, the court stated that Attorney Ferry was not named as a party to the settlement agreement, the language of which was "clear

that the parties to the contract [were][the plaintiff] and [the defendant]." The court also stated that the fact that Attorney Ferry signed the settlement agreement under the notation "Approved as to Form and Agreed as to Paragraph Nine"[2] "[did] not, by itself, bind him to the entirety of the contract." Rather, the court reasoned that such language in contracts has been interpreted as meaning that "counsel has read the document, [that the document] embodies the parties' agreement, and [that] counsel perceives no impediment to his client signing it." (Internal quotation marks omitted.) Thus, the court determined that Attorney Ferry "only approved the settlement agreement as to form and agreed to be bound by paragraph nine," not by the confidentiality and nondisparagement provisions, which did not contain similar language.

The court stated further: "Even if the language of the confidentiality and nondisparagement provisions in the present case purported to bind the parties' counsel to the provisions, the defendant is not suing Attorney Ferry for breach of contract, but rather, the defendant's counterclaim essentially seeks to attribute Attorney Ferry's alleged breach of the settlement agreement to the plaintiff, alleging that the plaintiff breached the contract through the actions of Attorney Ferry. Accordingly, for Attorney Ferry's alleged breach of the settlement agreement to be attributable to the plaintiff, Attorney

---

[2] Paragraph nine of the settlement agreement is titled "Representations by Plaintiff and Plaintiff's Counsel" and provides: "By executing this [s]ettlement [a]greement, [the] [p]laintiff's [c]ounsel represent and warrant that: Other than [the] [p]laintiff and [the] [p]laintiff's [c]ounsel, there are no other persons or entities having any interest in the [s]ettlement [a]mount. To the extent that there are any such other persons, including experts, consultants, [cocounsel], referring attorneys or any entities representing [the] [p]laintiff or having any interest in the [attorney's] fees or litigation costs incurred in connection with the settlement on behalf of [the] [p]laintiff, any such interest shall be satisfied entirely and completely by [the] [p]laintiff. If any such person seeks recovery from [the defendant] of any amount supposedly due as a result of this settlement, [the] [p]laintiff shall defend, indemnify and hold [the defendant] harmless from and against any such claims, including [attorney's] fees and costs."

Ferry must have been acting under a form of agency theory on behalf of the plaintiff." As the court reasoned: "In the present case, the parties agreed to have this matter decided on [the basis of] the joint stipulation of facts and exhibits. There is no evidence in the record to support a claim that Attorney Ferry was acting as the plaintiff's agent with respect to the postings. The joint stipulation of facts only includes a statement that '[t]he plaintiff was represented by Attorney . . . Ferry in the underlying action.' Connecticut courts have recognized that, '[t]he general rule is that the acts of an attorney are imputed to a client when they are performed *in the furtherance of the business for which the attorney has been retained*.' . . . Here, there is no evidence in the record with respect to whether Attorney Ferry was acting in furtherance of the business for which he had been retained, or whether Attorney Ferry was acting with actual or apparent authority when the posts were published to Attorney Ferry's website and Facebook pages. Therefore, the defendant has failed to meet his burden of establishing that Attorney Ferry was acting as the plaintiff's agent with actual or apparent authority when he published the posts, as required for Attorney Ferry's actions to be attributed to the plaintiff . . . ." (Citations omitted; emphasis in original.)

In analyzing the parties' breach of contract claims, the court concluded: "It is undisputed that the settlement agreement was validly formed. Under the settlement agreement, the plaintiff was obligated to withdraw the complaint against the defendant in the underlying action, withdraw the appeal, and provide the defendant's counsel with a complete and correct W-9 form. It is not in dispute that the plaintiff satisfied these obligations and the plaintiff performed under the settlement agreement. The defendant's obligations under the settlement agreement included paying a confidential sum of money to the plaintiff in two payments. The first payment was to be made to the plaintiff within thirty days of the granting of [a] motion to modify the prejudgment remedy. It is undisputed that the defendant made the first

payment in a timely manner. The second payment was to be made by April 30, 2020. It is also undisputed that the defendant did not make the second payment to the plaintiff and that the payment remains outstanding. Lastly, the plaintiff suffered damages as a result of the defendant's nonpayment, namely, the loss of the second payment owed to him under the settlement agreement.

"Simply put, the plaintiff prevails on his breach of contract claim, as the settlement agreement was validly formed, the plaintiff performed under the contract, the defendant breached the contract, and the plaintiff suffered damages as a result. The defendant cannot prevail on his breach of contract counterclaim, as he breached the settlement agreement by failing to make the second payment [and] was not excused by the actions of Attorney Ferry." From the judgment rendered thereon, this appeal followed.

On appeal, the defendant challenges the court's decision on two grounds, namely, that the court improperly (1) failed to find that Attorney Ferry was bound by the confidentiality and nondisparagement provisions in the settlement agreement, and (2) found that Attorney Ferry was not acting as an agent of the plaintiff when he disclosed the confidential information from the settlement agreement on his law firm's website and Facebook page. The plaintiff counters by arguing, first, that the court correctly found that the settlement agreement was not binding on Attorney Ferry and, second, that, even if Attorney Ferry were bound by the language of the confidentiality and nondisparagement provisions in the settlement agreement and breached them through his Facebook and website postings, Attorney Ferry's actions could not be attributed to the plaintiff because there was no evidence that Attorney Ferry was acting as the plaintiff's agent when he made the postings. We agree with the plaintiff's latter argument and, thus, need not address the defendant's first claim on appeal—whether Attorney Ferry was bound by the confidentiality and nondisparagement provisions of the settlement

agreement. That is, even if we were to determine that the court's finding that Attorney Ferry was not bound by the confidentiality and nondisparagement provisions of the settlement agreement is clearly erroneous, we, nonetheless, must affirm the judgment due to the lack of evidence demonstrating that Attorney Ferry was acting as the plaintiff's agent and, thus, that any alleged breach of the settlement agreement by Attorney Ferry could be attributed to the plaintiff.

The following legal principles and standard of review govern our resolution of this appeal. We begin with the basic principle that "[a]n attorney's actions can bind his client . . . ." (Citation omitted.) *DeMattia* v. *Mauro*, 86 Conn. App. 1, 9 n.4, 860 A.2d 262 (2004). "[T]he relationship between attorneys and their clients is one of agency. *Ackerman* v. *Sobol Family Partnership, LLP*, [298 Conn. 495, 509, 4 A.3d 288 (2010)]; see also 1 Restatement (Third), [Agency] § 1.01, comment (c) [p. 19 (2006)]. 'The general rule is that the acts of an attorney are imputed to a client when they are performed in the furtherance of the business for which the attorney has been retained.' *Allen* v. *Nissley,* 184 Conn. 539, 542–43, 440 A.2d 231 (1981)." *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, 125 Conn. App. 678, 702–703, 10 A.3d 61 (2010), cert. denied, 300 Conn. 914, 13 A.3d 1100 (2011).

"It is well settled that [t]he nature and extent of an agent's authority is a question of fact for the trier . . . . Accordingly, [appellate courts] review the trial court's findings with regard to agency and an agent's apparent authority under the clearly erroneous standard.

"A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine

the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling. . . .

"With respect to the governing legal principles, it is a general rule of agency law that the principal in an agency relationship is bound by, and liable for, the acts in which his agent engages with authority from the principal, and within the scope of the agent's employment. . . . An agent's authority may be actual or apparent. . . . Actual authority exists when [an agent's] action [is] expressly authorized . . . or . . . although not authorized, [is] subsequently ratified by the [principal]. . . . In contrast, [a]pparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses. . . . Consequently, apparent authority is to be determined, not by the agent's own acts, but by the acts of the agent's principal. . . . *Ackerman* v. *Sobol Family Partnership, LLP*, [supra, 298 Conn. 507–508] . . . ." (Citation omitted; footnotes omitted; internal quotation marks omitted.) *Hadji* v. *Snow*, 232 Conn. App. 829, 839–41, 339 A.3d 1168, cert. denied, 353 Conn. 902, 341 A.3d 958 (2025); see also *LeBlanc* v. *New England Raceway, LLC*, 116 Conn. App. 267, 275, 976 A.2d 750 (2009) ("Significantly, our case law provides that authority to perform services on behalf of a principal does not automatically confer either actual or apparent authority to bind the principal in other respects. . . . In particular, [a] principal is bound to contracts executed by an agent only if it is within the agent's authority to contract on behalf of that principal . . . ." (Citation omitted; internal quotation marks omitted.)).

"The issue of apparent authority is one of fact, requiring the trier of fact to evaluate the conduct of the parties in light of all the surrounding circumstances. . . . Only in the clearest of circumstances, where no other conclusion could reasonably be reached, is the trier's determination of fact to be disturbed. . . .

"The issue of apparent authority is . . . to be determined based on two criteria. . . . First, it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted [the agent] to act as having such authority. . . . Second, the party dealing with the agent must have, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent's action." (Internal quotation marks omitted.) *Hadji* v. *Snow*, supra, 232 Conn. App. 841. "The burden of proving agency is on the party asserting its existence." *Lee* v. *Duncan*, 88 Conn. App. 319, 324, 870 A.2d 1, cert. denied, 274 Conn. 902, 876 A.2d 12 (2005).

In the present case, we cannot conclude that the court's finding that the defendant did not meet his burden of proving that Attorney Ferry was acting as an agent of the plaintiff at the time he published the posts is clearly erroneous. See generally *Woodbridge Crossing Condominium Assn., Inc.* v. *Ferguson*, 229 Conn. App. 99, 104, 325 A.3d 1205 (2024) (trial court's finding that plaintiff did not sustain burden of proof was not clearly erroneous). "The existence of an agency relationship is a question of fact . . . which may be established by circumstantial evidence based upon an examination of the situation of the parties, their acts and other relevant information." (Internal quotation marks omitted.) *Bank of America, N.A.* v. *Gonzalez*, 187 Conn. App. 511, 516, 202 A.3d 1092 (2019). On the basis of our review of the record in the present case, we agree with the court that the defendant did not produce evidence to establish that Attorney Ferry was acting as an agent of the plaintiff, or that he was acting with the plaintiff's apparent authority, when he published the posts at issue.

As we have stated, "apparent authority is to be determined, not by the agent's own acts, but by the acts of the agent's principal." (Internal quotation marks omitted.) *Ackerman* v. *Sobol Family Partnership, LLP*, supra, 298 Conn. 508. The record in the present case is devoid

of any evidence concerning actions by the plaintiff relative to Attorney Ferry's online posts. For example, the defendant did not present evidence showing that the plaintiff directed or embraced the posts, that he knowingly permitted or encouraged Attorney Ferry to divulge the confidential information in the posts, or that the plaintiff even had knowledge of them.

Additionally, "[a]n essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal." (Internal quotation marks omitted.) *Dushay* v. *Southern Connecticut Hockey League, LLC*, 234 Conn. App. 609, 625, 344 A.3d 175 (2025). As we have indicated, "acts of an attorney are imputed to a client when they are performed in the furtherance of the business for which the attorney has been retained."[3]

[3] The defendant contends that, because "agency relationships between clients and attorneys are complicated . . . it is appropriate to consider rules outside of ordinary agency rules." In support of this contention, the defendant relies on *Yale University* v. *Out of the Box, LLC*, 118 Conn. App. 800, 808, 990 A.2d 869 (2010), and asserts that "the decision in *Yale University* makes clear [that] the general rules regarding agents and apparent authority become more complicated when the agent is a lawyer who has settled a case for his or her client. . . . Thus, the general rule to which the trial court cites, which is that 'the acts of an attorney are imputed to a client when they are performed in the furtherance of the business for which the attorney has been retained' [*Allen* v. *Nissley*, supra, 184 Conn. 542–43] is not necessarily as straightforward and dispositive as the trial court asserts it is." We conclude that the defendant's reliance on *Yale University* is misplaced. That case involved the issue of whether an attorney had apparent authority to enter into a settlement agreement on behalf of the plaintiff, his client, and to bind the plaintiff to the terms of that agreement. *Yale University* v. *Out of the Box, LLC*, supra, 802. The present case, by contrast, involves conduct by Attorney Ferry in posting advertisements to his law firm's website and Facebook page, which occurred after the parties entered into their settlement agreement, and the issue of whether, in doing so, Attorney Ferry was acting as an agent of the plaintiff; there is no dispute involving the representation provided by Attorney Ferry in connection with the settlement agreement entered into between the plaintiff and the defendant, or the validity of that agreement. Moreover, in *Yale University*, this court, in affirming the trial court's finding of apparent authority, noted that "this is not a case in which the court found apparent authority simply as a result of retaining a lawyer and having him negotiate on behalf of a client." Id., 810. In the present case, however,

(Internal quotation marks omitted.) *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, supra, 125 Conn. App. 703. The record in the present case similarly is bereft of evidence demonstrating that Attorney Ferry's online postings were done as part of his representation of the plaintiff. There is nothing in the parties' stipulation of facts demonstrating that Attorney Ferry's postings were done at the behest or for the benefit of the plaintiff, nor could the postings be considered to be in furtherance of the business for which the plaintiff had retained Attorney Ferry, namely, to provide legal representation in connection with the plaintiff's civil action against the defendant, which already had concluded and settled before the postings were made.

The defendant appears to be contending that, because the attorney-client relationship between Attorney Ferry and the plaintiff had not terminated prior to Attorney Ferry's online postings, it reasonably could be assumed that Attorney Ferry was acting as the plaintiff's agent when he published the posts.[4] The defendant, however,

the defendant, in effect, argues that the trial court should have found that Attorney Ferry was acting as the plaintiff's agent simply because they had a lawyer-client relationship, regardless of whether Attorney Ferry's postings were connected to or in furtherance of that relationship. See footnote 4 of this opinion.

[4] In his principal appellate brief, the defendant asserts: "Given the facts of this particular case, the defendant had reason to believe that . . . Attorney Ferry was acting as the plaintiff's agent in the postings on his [law] firm's website and Facebook page based on the course of dealing between Attorney Ferry and the defendant's counsel. Attorney Ferry was counsel for the plaintiff prior to the execution of the [settlement] agreement. Attorney Ferry was counsel for the plaintiff during the execution of the agreement and was one of only four individuals (other than the judge) who was aware of the contents of, and actually signed, the agreement, in part or in whole. The agreement provided for two payments to be made to the plaintiff by the defendant. Attorney Ferry continued to represent the plaintiff prior to the defendant's tender of the first payment, and his representation of the plaintiff was expected to continue until full payment was made. . . . The parties thus did not contemplate [that] Attorney Ferry's representation of the plaintiff would terminate once the agreement was signed and executed. Attorney Ferry's publications additionally referred to the fact of the agreement and referenced that each alleged victim, a class which included the

fails to recognize that, for Attorney Ferry's conduct to be imputed to the plaintiff, it must have been done at the plaintiff's request or for the plaintiff's benefit, or in furtherance of the business for which the plaintiff had retained Attorney Ferry. The record contains no such evidence to that effect. Rather, it appears that the postings were done by Attorney Ferry in an effort to solicit business for his law firm. Indeed, in his principal appellate brief, the defendant refers to the postings as "advertisements . . . ." The fact that Attorney Ferry still represented the plaintiff at the time he published the posts does not, by itself, establish that, in doing so, Attorney Ferry was acting as an agent of the plaintiff. See generally *Acheson* v. *White*, 195 Conn. 211, 213 n.4, 487 A.2d 197 (1985) ("[a]n attorney who is authorized to represent a client in litigation does not automatically have either implied or apparent authority to settle or otherwise to compromise the client's cause of action"); see also *Ackerman* v. *Sobol Family Partnership, LLP*, supra, 298 Conn. 510 (same).

Accordingly, the court's finding that the defendant failed to meet his burden of demonstrating that Attorney Ferry was acting as the plaintiff's agent when he made the online publications is not clearly erroneous. Therefore, the defendant's claim that "the plaintiff is liable for his agent's conduct in breaching the terms of the [settlement] agreement" fails.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

plaintiff, should feel satisfaction that compensation was furnished by the defendant to the alleged victims. Attorney Ferry thus was an agent when the agreement was negotiated, when it was signed, when he learned about the confidential information it contained, and when he decided to disseminate that information while the settlement was only partially consummated." (Footnotes omitted.)

[5] We note that the defendant does not challenge the court's findings that "the settlement agreement was validly formed, the plaintiff performed under the contract, the defendant breached the contract, and the plaintiff suffered damages as a result." Rather, his claims on appeal challenging the judgment are predicated on his contentions that his

obligation to make the required second payment under the settlement agreement was excused due to the breach of the settlement agreement by Attorney Ferry, who was acting as the plaintiff's agent, and that the plaintiff was liable for that breach. Because we have rejected these contentions, we need not examine further the court's findings in support of its determination that the defendant breached the settlement agreement.